83 P.3d 43

**MARY LOU C., Appellant,**

v.

**ARIZONA DEPARTMENT OF ECONOMIC SECURITY, and Joseph C., Appellees.**

**No. 1 CA–JV 03–0046.**

Court of Appeals of Arizona, Division 1, Department D.

Jan. 27, 2004.

Leslie J. Klass, Phoenix, Attorney for Appellant.

Terry Goddard, Arizona Attorney General by Judy A. Sheirbon, Assistant Attorney General, Phoenix, Attorneys for Appellee Arizona Department of Economic Security.

## OPINION

WINTHROP, Judge.

¶1 Mary Lou C. ("Appellant") appeals from the juvenile court's order terminating her parent-child relationship with Joseph C. ("Joseph") pursuant to Arizona Revised Statutes ("A.R.S.") section 8–533(B)(3) and (10) (Supp.2003).[1] Appellant argues that the juvenile court erred in (1) terminating her parental rights based on the "same cause" ground of A.R.S. § 8–533(B)(10); (2) not considering an implicit duty of Child Protective Services ("CPS") to provide her with reasonable services in connection with the grounds set forth in A.R.S. § 8–533(B)(3); and (3) finding that termination of her parental rights would be in Joseph's best interest. We have appellate jurisdiction pursuant to A.R.S. §§ 12–120.21(A)(1) (2003), 12–2101(B) (2003), and 8–235(A) (Supp.2003). For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2 On April 17, 2002, Appellant gave birth to Joseph. At the time of the birth, the father's identity and whereabouts were unknown, and Appellant was incarcerated, serving 2.5 years' imprisonment for violating the terms of her probation imposed for posses-

---

1. We note that former A.R.S. § 8–533(B)(9) was renumbered as A.R.S. § 8–533(B)(10). *See* 2002 Ariz. Sess. Laws, ch. 173, § 4. We refer to the current version of the statute throughout this decision.

sion of illegal narcotics; thus, Appellant arranged for a relative to care for Joseph. On April 26, 2002, the juvenile court terminated Appellant's parental rights to her daughter, Mary Ann C. ("Mary"), setting forth the grounds for severance as A.R.S. § 8–533(B)(1) (abandonment) and (B)(7)(a) and (b) (out-of-home placement/time in care).[2] The order further set forth that Mary's best interest would be served by a termination because Appellant "was using drugs prior to giving birth and the baby [Mary] was born substance abused."

¶ 3 On May 9, 2002, the Arizona Department of Economic Security ("ADES") filed a dependency petition, asking the juvenile court to adjudicate Joseph a dependent child as to Appellant and Joseph's father.[3] The petition alleged that CPS had taken Joseph into temporary custody because the relative who had been caring for him decided she could no longer do so after learning that Appellant planned to raise him after she was released from prison. The petition also alleged that Appellant had previously given birth to eight other children, none of whom were in her care; that the four youngest of the previous eight children had been born exposed to cocaine and other substances, and Appellant's parental rights to those children had been terminated; and that Appellant had admitted that, although Joseph tested negative for drugs at birth, she had exposed Joseph to illegal drugs during her pregnancy, and that abuse of drugs led to the revocation of her probation and her current incarceration.

¶ 4 On May 11, 2002, Joseph was placed in an emergency receiving home until placement in a foster home with a sibling (his sister, Mary) could be approved. At the May 14, 2002 preliminary protective hearing, the juvenile court adjudicated Joseph dependent as to Appellant, made Joseph a temporary ward of the court, and placed him in the physical custody of ADES. The court also ordered ADES to provide Appellant with a psychological evaluation. Due to Appellant's

lengthy history of substance abuse and previous inability to parent her other children, ADES developed a concurrent case plan for family reunification and severance and adoption. At the July 26, 2002 disposition hearing, the juvenile court acknowledged the concurrent case plan.

¶ 5 In November 2002, ADES developed a case plan of severance and adoption for Joseph. On November 21, 2002, ADES filed a motion to accelerate the permanency planning hearing and, although Appellant objected, the juvenile court granted the motion. At the January 7, 2003 permanency planning hearing, the court approved the case plan of severance and adoption and ordered that ADES file a motion for termination of the parent-child relationship within ten days. On January 14, 2003, ADES filed a motion for termination of the parent-child relationship on the grounds of abandonment (father); "mental illness and/or mental deficiency, and/or a history of chronic abuse of dangerous drugs, controlled substances and/or alcohol" (Appellant); length of sentence of incarceration (Appellant); out-of-home placement/time in care for nine months or longer (Appellant); and prior termination of another child within the preceding two years for the same cause and currently unable to discharge parental responsibilities due to the same cause (Appellant).

¶ 6 On March 19, 2003, the juvenile court held a contested hearing to determine if Appellant's parental rights as to Joseph should be severed. At the conclusion of the hearing, the court issued a minute entry that included the following findings and order:

> THE COURT FINDS the Department has proven by clear and convincing evidence that the mother does have a history of chronic abuse of dangerous drugs, controlled substances, and/or alcohol. Mother admitted to alcohol abuse at the time she became pregnant with the child, and there are reasonable grounds based on the testimony of Dr. Juliano that the condition will

---

**2.** Former A.R.S. § 8–533(B)(7)(a) and (b) is now numbered as A.R.S. § 8–533(B)(8)(a) and (b). *See* 2002 Ariz. Sess. Laws, ch. 173, § 4.

**3.** ADES states, and Appellant does not dispute, that on June 9, 2003, the juvenile court terminated the father's parental rights to Joseph on the ground of abandonment.

continue for a prolonged indeterminate period of time.

With respect to the ground that parental rights of another child have been terminated within the proceeding [sic] two years for the same cause and the mother is currently unable to discharge parental responsibilities due to the same cause, the testimony is clear that the rights of the baby's sister were terminated on or about April 1, 2002. That is within two years. The cause for the previous termination was, in fact, substance abuse. The cause of the current petition on the grounds alleged are substance abuse.

IT IS ORDERED granting the Motion for Termination pursuant to ARS [§ ] 8–533(B)(3) and ARS [§ ] 8–533(B)(10).

On April 1, 2003, the juvenile court entered a signed order terminating Appellant's parental rights to Joseph after finding that grounds for severance pursuant to § 8–533(B)(3) and (10) applied. Appellant filed a timely notice of appeal.

## ANALYSIS

*I. Severance Pursuant to A.R.S. § 8–533(B)(10)*

¶ 7 Appellant argues that the juvenile court erred as a matter of law in terminating her parental rights based on the "same cause" ground of A.R.S. § 8–533(B)(10). She contends that the court did not find that the statutory grounds upon which her parental rights to Mary were terminated (abandonment and out-of-home placement/time in care) applied to Joseph and that the court improperly "speculated" that her substance abuse was the same cause that both led to the termination of her rights to Mary and rendered her unable to parent Joseph.

■ ¶ 8 Although the right to custody of one's children is fundamental, it is not absolute. *See Michael J. v. Ariz. Dep't of Econ. Sec.,* 196 Ariz. 246, 248, ¶¶ 11–12, 995 P.2d 682, 684 (2000). "To justify termination of the parent-child relationship, the trial court must find, by clear and convincing evidence, at least one of the statutory grounds set out in section 8–533, and also that termination is in the best interest of the child." *Id.* at 249,

¶ 12, 995 P.2d at 685 (citing A.R.S. § 8–533(B)). Because the trial court is "in the best position to weigh the evidence, judge the credibility of the parties, observe the parties, and make appropriate factual findings," *Pima County Dependency Action No. 93511,* 154 Ariz. 543, 546, 744 P.2d 455, 458 (App. 1987), this court will not reweigh the evidence but will look only to determine if there is evidence to sustain the court's ruling. *Maricopa County Juv. Action No. JV–132905,* 186 Ariz. 607, 609, 925 P.2d 748, 750 (App. 1996). "We will not disturb the juvenile court's disposition absent an abuse of discretion or unless the court's findings of fact were clearly erroneous, i.e., there is no reasonable evidence to support them." *Id.*

■ ¶ 9 Additionally, we review *de novo* legal issues requiring the interpretation and application of A.R.S. § 8–533. *See Ariz. Dep't of Econ. Sec. v. Ciana H.,* 191 Ariz. 339, 341, ¶ 11, 955 P.2d 977, 979 (App.1998); *Patterson v. Maricopa County Sheriff's Office,* 177 Ariz. 153, 156, 865 P.2d 814, 817 (App.1993). When construing a statute, we look first to the statutory language; if the language is plain and unambiguous, we apply it without resorting to other rules of construction. *Ariz. Dep't of Econ. Sec. v. Superior Court,* 186 Ariz. 405, 408, 923 P.2d 871, 874 (App.1996). We also interpret a statute's individual provisions in the context of the entire statute. *Id.; Maricopa County Juv. Action No. JS–5894,* 145 Ariz. 405, 410, 701 P.2d 1213, 1218 (App.1985). "We will refrain from construing a statute to require something not within the plain intent of the legislature as expressed by the language of the statute." *State v. Affordable Bail Bonds,* 198 Ariz. 34, 37, ¶ 13, 6 P.3d 339, 342 (App.2000) (citation omitted); *see also In re Moises L.,* 199 Ariz. 432, 434, ¶ 6, 18 P.3d 1231, 1233 (App.2000) (stating that we avoid construing a statute so as to render its language superfluous, void, contradictory, or insignificant); *In re Maricopa County Juv. Action No. JS–5209 & JS–4963,* 143 Ariz. 178, 183, 692 P.2d 1027, 1032 (App.1984) (stating that a statute "will not be held void for vagueness if any reasonable and practical construction can be given to its language") (citation omitted).

¶ 10 Section 8–533(B)(10) provides:

**B.** Evidence sufficient to justify the termination of the parent-child relationship shall include any one of the following, and in considering any of the following grounds, the court shall also consider the best interests of the child:

. . . .

10. That the parent has had parental rights to another child terminated within the preceding two years for the same cause and is currently unable to discharge parental responsibilities due to the same cause.

¶11 Contrary to Appellant's assertion, subsection (B)(10) does not require the juvenile court to find that the same statutory "ground" that supported termination of the parent's rights to a sibling within the preceding two years also supports termination of the parent's rights to the child at issue. Instead, subsection (B)(10) uses the terminology "same cause." Given the statute's plain language, the juvenile court reasonably construed the statute to require that the underlying cause for the termination of Appellant's rights to Mary was the same cause that rendered her unable to parent Joseph. Moreover, requiring ADES to prove that a statutory "ground" that applied to Mary also applied to Joseph would render subsection (B)(10) superfluous. Further, merely considering the ground or grounds relied on in a preceding severance would not always enable the court to determine whether the same cause prevented the parent from parenting the subsequent child, because many of the severance grounds contain alternative elements or terms. *See* A.R.S. § 8–533(B)(3) ("mental illness, mental deficiency or a history of chronic abuse of dangerous drugs, controlled substances or alcohol"); A.R.S. § 8–533(B)(4) (deprivation of civil liberties and nature of a parent's felony conviction or length of a parent's incarceration); A.R.S. § 8–533(B)(8)(a)–(b) (substantial neglect, wilful refusal, or inability "to remedy the circumstances" causing the child's out-of-home placement). We conclude that the juvenile court properly interpreted the "same cause" language in subsection (B)(10) as referring to the factual "cause" that led to the termination of Appellant's parental rights to Mary, and not the statutory ground or grounds that supported that preceding severance.

¶12 Additionally, sufficient evidence supports the court's finding that Appellant's chronic substance abuse was the "same cause" that led to the termination of her parental rights to Mary in April 2002 and rendered her unable to parent Joseph at the time of his severance hearing in March 2003. Appellant admitted that she had a twelve-year history of substance abuse that led to her serving two terms of incarceration for drug-related crimes and that the underlying cause for the termination of her parental rights to Mary was her substance abuse. CPS case manager Dorinda Sigala substantially confirmed Appellant's testimony. Furthermore, the order terminating Appellant's parental rights to Mary contains not only the findings that Appellant abused illegal drugs while she was pregnant with Mary and that Mary was born substance exposed, but also the finding that she remained incarcerated at the time of Mary's severance hearing.

¶13 Appellant was not scheduled to be released from prison until sometime between May and September 2003, and she testified that she wanted her mother to care for Joseph or to have him placed with her while she completed inpatient substance abuse treatment after she was released from prison. However, Dr. Daniel Juliano, the psychologist who evaluated Appellant on July 22, 2002, testified that Appellant's history of chronic substance abuse, coupled with her personality disorder, impaired her ability to respond to treatment and "would make her not able to parent the child at this time." Dr. Juliano opined that, due to the severity of Appellant's substance abuse and her absence of job skills, it was unlikely that Appellant would be able to discharge her parental responsibilities for at least sixteen to twenty-four months following her release from prison. Dr. Juliano further opined that Appellant needed to complete a six-month to eight-month program of inpatient treatment, as well as an aftercare substance abuse treatment program, and exhibit a pattern of sobriety for at least twelve months following her release from prison before he could suggest she would have even some likelihood of suc-

cess. Dr. Juliano and Ms. Sigala testified that there was a very low probability that Appellant would be able to maintain sobriety because she had abused illegal drugs for so many years and had resumed using drugs soon after she was released from prison in June 2001. We conclude that sufficient evidence supports the juvenile court's finding that Appellant's parental rights to Mary had been terminated within the preceding two years for substance abuse and that Appellant was currently unable to discharge parental responsibilities as to Joseph due to the same cause.

## II. Reasonable Efforts

¶ 14 Appellant next contends that the juvenile court erred in terminating her parental rights to Joseph pursuant to A.R.S. § 8–533(B)(3) because ADES failed to make reasonable efforts to provide appropriate reunification services. Because we find that sufficient evidence supports the first ground for termination, we need not consider the § 8–533(B)(3) ground. *See Maricopa County Juv. Action No. JS–501568,* 177 Ariz. 571, 575, 869 P.2d 1224, 1228 (App.1994). However, because Appellant raises the issue generally whether ADES made reasonable efforts to provide her with appropriate reunification services, we consider whether ADES was required to make reasonable efforts to provide such services before her parental rights to Joseph were terminated pursuant to A.R.S. § 8–533(B)(10) based on the finding that Appellant's parental rights to Mary had been terminated within the preceding two years for substance abuse and that Appellant was currently unable to discharge parental responsibilities as to Joseph due to the same cause.

 ¶ 15 The requirement that ADES make an effort to preserve the family is mandated on constitutional grounds, as a necessary element to overcome the "fundamental liberty interest of the natural parents in the care, custody and management of their child." *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.,* 193 Ariz. 185, 192, ¶ 32, 971 P.2d 1046, 1053 (App.1999) (quoting *Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)); *Toni W. v. Ariz. Dep't of Econ. Sec.,* 196 Ariz. 61, 64–65, ¶ 11, 993 P.2d 462, 465–66 (App.1999). Because fundamental interests are no less involved here than in cases involving other grounds for severance, we conclude that the requirement applies here. *See Mary Ellen C.,* 193 Ariz. at 192, ¶ 34, 971 P.2d at 1053; *but see Toni W.,* 196 Ariz. at 66, ¶ 15, 993 P.2d at 467 (finding that, in a case involving abandonment, a lesser constitutional standard existed, and the mother was not entitled to require ADES to provide her with reunification services). Accordingly, ADES "was obliged to prove by clear and convincing evidence that it had made a reasonable effort to provide [Appellant] with rehabilitative services or that such an effort would be futile." *Mary Ellen C.,* 193 Ariz. at 193, ¶ 42, 971 P.2d at 1054.

¶ 16 In this case, the juvenile court did not engage in a reasonable efforts analysis with regard to A.R.S. § 8–533(B)(10). Additionally, both the State and Appellant agree that the juvenile court found, in connection with the severance grounds set forth in A.R.S. § 8–533(B)(3), that ADES had not proven by clear and convincing evidence that it had made reasonable efforts to provide reunification services to Appellant. However, our review of the record reveals that, although the juvenile court made statements at the March 19, 2003 severance hearing from which one could infer that the court did not believe ADES had made reasonable efforts to provide appropriate services to Appellant, the court did not explicitly make such a finding.[4] Additionally, the juvenile court

---

4. The evidence presented indicates that the only services ADES provided Appellant while she was incarcerated were the July 22, 2002 psychological evaluation and one supervised visit with Joseph at the prison in July 2002 (despite representations made to the juvenile court by an ADES case manager at the July 26, 2002 disposition hearing that ADES would provide Appellant with visitation on a periodic basis and that ADES

would notify the court "if there's a problem"). Additionally, Appellant was encouraged to participate in substance abuse, anger management, and parenting classes that were available to her through the prison. While she was incarcerated, Appellant completed a six-hour twelve-step substance abuse prevention program, a twenty-session Hazelden Design for Living course, and several religion-based courses. She also attend-

made no finding whether an effort to provide such services would be futile.

■ ¶ 17 Nonetheless, we will presume that the juvenile court made every finding necessary to support the severance order if reasonable evidence supports the order. *See Pima County Severance Action No. S–1607*, 147 Ariz. 237, 238, 709 P.2d 871, 872 (1985) (citing *Maricopa County Juv. Action No. JS–3594*, 133 Ariz. 582, 585, 653 P.2d 39, 42 (App.1982)). If the juvenile court fails to expressly make a necessary finding, we may examine the record to determine whether the facts support that implicit finding. *See Pima County Severance Action No. S–2397*, 161 Ariz. 574, 577, 780 P.2d 407, 410 (App.1989).

■ ¶ 18 Although the record before us does not support the conclusion that ADES made reasonable efforts to provide appropriate reunification services to Appellant, the record does support the implicit finding that rehabilitative measures on the part of ADES would have been futile in remedying the cause for Appellant's inability to discharge parental responsibilities by the time of the severance hearing. As we have noted, Dr. Juliano testified that Appellant's severe substance abuse problem (as well as lack of job skills) would render her unable to discharge her parental responsibilities for sixteen to twenty-four months following her release from prison. After Appellant's release from prison, and despite the fact that she had "been basically [in] a forced rehab while incarcerated," she would still need to complete six to eight months' inpatient treatment, aftercare substance abuse treatment, individual therapy, and hands-on parenting instruction. Further, these would need to be completed in "a sequence," although "the therapy and the parenting classes could be pretty close in proximity." Moreover, because she was still incarcerated, she obviously could not have completed the aftercare program by the time

of the severance hearing.[5] Thus, even if ADES had offered the necessary services, the facts indicate that Appellant could not have completed all of the services required to remedy the cause making her unable to discharge parental responsibilities as to Joseph by the time of the severance hearing.[6]

### III. Best Interest

■ ¶ 19 Appellant additionally challenges the juvenile court's finding that termination of her parental rights was in Joseph's best interest. To support a finding that termination is in the child's best interest, the petitioner must prove that the child will affirmatively benefit from the termination. *Maricopa County Juv. Action No. JS–500274*, 167 Ariz. 1, 6, 804 P.2d 730, 735 (1990). This means that "a determination of the child's best interest must include a finding as to how the child would benefit from a severance or be harmed by the continuation of the relationship." *Id.* at 5, 804 P.2d at 734. The best interest requirement may be met if, for example, the petitioner proves that a current adoptive plan exists for the child, *id.* at 6, 804 P.2d at 735, or even that the child is adoptable. *Maricopa County Juv. Action No. JS–501904*, 180 Ariz. 348, 352, 884 P.2d 234, 238 (App.1994). The juvenile court may consider evidence that an existing placement is meeting the needs of the child in determining that severance is in the child's best interest. *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 5, 982 P.2d 1290, 1291 (App.1998).

¶ 20 With respect to Joseph's best interest, the juvenile court made the following findings:

> THE COURT FINDS that the best interests of the child are in termination.
>
> THE COURT FINDS the child is adoptable, that the child is in appropriate foster care/adoption placement, is placed with his sister, and there is an adoption proceeding

---

ed mandatory academic classes, but had not taken any parenting classes, allegedly due to scheduling conflicts with her academic classes. The trial court found that Appellant had "done everything she could possibly do while she was in prison to remedy the situation."

5. As Dr. Juliano opined, "for a year to 18 months and actually a little longer than that, we won't

know" whether Appellant could overcome her drug habit and become able to parent.

6. We also note that, previously, Appellant had been offered an inpatient program for substance abuse, parenting aide services, parenting classes, random urinalysis testing, and counseling. However, she never successfully completed any substance abuse treatment program.

going on with respect to the sister. The fact that the child will be with his sister is an appropriate placement. The mother is really unable to parent and

with a history of substance abuse, the court finds that it is in the best interests of the child to terminate the mother's parental rights.

¶ 21 The record supports the trial court's findings. Since May 2002, Joseph has been living with his foster parents, who have already adopted Mary. Joseph is strongly bonded to his foster parents, who want to adopt him as well. Joseph is thriving and happy in the foster home, and the placement is attending to his needs. We therefore conclude that sufficient evidence supports the juvenile court's finding that termination of Appellant's parental rights is in Joseph's best interest.

## CONCLUSION

¶ 22 The juvenile court's severance order is affirmed.

CONCURRING: JON W. THOMPSON, Presiding Judge, and JOHN C. GEMMILL, Judge.