NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

AMANDA S., *Appellant*,

*v.*

ARIZONA DEPARTMENT OF ECONOMIC SECURITY, R.R., *Appellees*.

No. 1 CA-JV 13-0313
FILED 06-10-2014

---

Appeal from the Superior Court in Mohave County
No. S8015JD201100026
The Honorable Richard Weiss, Judge

**AFFIRMED**

---

COUNSEL

Law Offices of Heather C. Wellborn, P.C., Lake Havasu City
By Heather C. Wellborn
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Erika Z. Alfred
*Counsel for Appellees*

---

**MEMORANDUM DECISION**

---

Presiding Judge Patricia K. Norris delivered the decision of the Court, in which Judge Samuel A. Thumma and Judge Kent E. Cattani joined.

---

**N O R R I S**, Judge:

¶1        Amanda S. appeals from the superior court's order terminating her parental rights to her son, R.R., arguing the Arizona Department of Economic Security ("ADES") failed to present sufficient evidence to terminate her parental rights.   Amanda also argues the superior court should have admitted a home study into evidence at the termination hearing.   For the following reasons, we disagree with Amanda's arguments and affirm the superior court's termination order.

**FACTS AND PROCEDURAL BACKGROUND**

¶2        In May 2011, Amanda admitted herself into a hospital because she "was really bad into a breakdown" and was suffering from memory lapses or "blackouts," hallucinations, and depression.  R.R., who was then three years old, initially stayed with family friends, but ADES placed him in foster care on June 21, 2011.

¶3        On August 25, 2011, ADES filed a dependency petition alleging Amanda had neglected R.R. due to her untreated mental health needs, inadequate housing, and financial instability.  Mother denied the allegations but stipulated to the need for a dependency and submitted the matter to the superior court, which found R.R. dependent and approved family reunification as the appropriate case plan.

¶4        On October 2, 2012, ADES reported to the superior court that Amanda had experienced an "emotional breakdown" on August 23, 2012 and had been taken to a mental health facility because of concerns for her mental stability.  ADES further reported Amanda had left an inpatient treatment facility against medical advice, had "struggle[d] to remain on her medication," and had admitted she may never be able to parent R.R. due to instability.  ADES thus recommended changing the case plan to severance and adoption.  On November 20, 2012, the superior court declined to change the case plan to severance and adoption but did approve concurrent case plans of family reunification and severance and

adoption. On March 5, 2013, however, the superior court changed the case plan to severance and adoption.

**¶5** In March 2013, Amanda petitioned the superior court to return R.R. to her under Rule 59 of the Arizona Rules of Procedure for the Juvenile Court. Following an evidentiary hearing, the superior court denied the Rule 59 motion.

**¶6** At the subsequent termination adjudication hearing that began on September 17, 2013, the parties stipulated to the admission of evidence from the Rule 59 hearing. At the conclusion of the hearing, the superior court found ADES had presented clear and convincing evidence to terminate Amanda's parental rights under Arizona Revised Statutes ("A.R.S.") section 8-533(B)(8)(c) (2014) (15 months out-of-home placement) and that termination was in R.R.'s best interests.[1]

## DISCUSSION

I.      Sufficiency of the Evidence

   A.      Termination Under A.R.S. § 8-533(B)(8)(c)

**¶7** Amanda first argues ADES failed to present clear and convincing evidence to terminate her parental rights under A.R.S. § 8-533(B)(8)(c) (15 months out-of-home placement). *See* A.R.S. § 8-537(B) (2014); Ariz. R.P. Juv. Ct. 66(c). We disagree.

**¶8** We review the superior court's decision to terminate parental rights for an abuse of discretion and will not disturb its findings unless they are clearly erroneous with no reasonable evidence to support them. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8, 83 P.3d 43, 47 (App. 2004). In termination proceedings, the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4, 53 P.3d 203, 205 (App. 2002).

---

[1]The court also found ADES had presented clear and convincing evidence to terminate Amanda's parental rights under A.R.S. § 8-533(B)(2) (neglect), (B)(3) (mental illness), and (B)(8)(a) (nine months out-of-home placement). We do not address these additional grounds for termination because clear and convincing evidence supports termination under A.R.S. § 8-533(B)(8)(c). *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3, 53 P.3d 203, 205 (App. 2002) (citations omitted).

¶9            Under A.R.S. § 8-533(B)(8)(c), a court may terminate parental rights if

> [t]he child has been in an out-of-home placement for a cumulative total period of fifteen months or longer pursuant to court order or voluntary placement pursuant to § 8-806, the parent has been unable to remedy the circumstances that cause the child to be in an out-of-home placement and there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future.[2]

The "circumstances which cause[d] the child to be in an out-of-home placement" are those that exist at the time of termination. *See Marina P. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 326, 330, ¶ 22, 152 P.3d 1209, 1213 (App. 2007) (explaining the same phrase as it is used in A.R.S. § 8-533(B)(8)(a)).

¶10          At the time of the termination hearing, R.R. had been in out-of-home placement continuously for more than 26 months. The superior court found Amanda had been unable to remedy the circumstances that led to R.R.'s out-of-home placement and there was a substantial likelihood that she was not capable of exercising proper and effective parental control in the near future. ADES presented evidence at the Rule 59 and termination hearings that Amanda was unable to care for R.R. due to her mental illness, inadequate housing, and financial instability. The ADES case manager testified she was not compliant with her case plan because of her mental health medication management, inadequate housing, and financial instability.

¶11          Additional evidence presented at the Rule 59 and termination hearings revealed the following: Amanda had been receiving mental health services, including being placed on mental health medication, since she was a child. Her diagnoses were chronic and, at the time of the hearings, included mood disorder, not otherwise specified and

---

       2The party seeking termination must also show "the agency responsible for the care of the child has made a diligent effort to provide appropriate reunification services." A.R.S. § 8-533(B)(8). Amanda does not argue ADES failed to meet this requirement, and we therefore do not address it.

borderline personality disorder. Amanda had been prescribed antipsychotic medication, but her medication use had been "very sporadic," and she had a history of taking herself off of medication. At the time of the hearings, Amanda was still admittedly suffering from depression, had hallucinations as recently as May 2013, and had issues with memory lapses or blackouts as recently as November 2012.[3]

¶12 Furthermore, Amanda's medical professionals were concerned that she had the habit of "paint[ing] maybe a slightly rosier picture than things were" and that she was "superficially bright," meaning she could project an image that may not have been accurate. Amanda's psychological evaluation conducted on August 27, 2013 -- after the Rule 59 hearing but before the termination hearing -- by a licensed psychologist reported Amanda had "[s]erious mental illness that include[d] mood instability, psychotic symptoms, and depression, along with problematic personality patterns." The psychologist further noted that her antipsychotic medication treatment "will likely need to continue for a prolonged and indeterminate period of time with a high probability of additional psychotic symptoms if medication treatment is discontinued" and noted that "despite recommendations for a number of years . . . [she] has not been consistent with medication treatment." The psychologist's prognosis that Amanda would be able to "discharge parental responsibilities in the foreseeable future appeared to be guarded" because of her problems with long-term medication compliance, discrepancies regarding the occurrence of blackouts, continued unemployment, financial instability, and associated difficulties attending to daily and basic needs. Moreover, R.R. required special care, and ADES was concerned with Amanda being able to maintain her own mental health while caring for him.

¶13 The record reflects that although Amanda had made great strides and commendable progress in working on her mental health needs, her progress happened much too late in the process. Even though Amanda was proactive in seeking services and had been attending

---

[3]The parties dispute whether Amanda had physically harmed R.R. during her blackouts. The case manager testified R.R. had told a case investigator that Amanda had bitten him while he was still in her care, and Amanda acknowledged she was concerned because R.R. said she had bitten him. However, Amanda testified the purported bite mark was a scrape from the neighbor's steps, but she also admitted she did not know what had happened to R.R. during her blackouts.

individual counseling and group sessions and receiving case management and therapy and medication management from her mental health providers, she had only been compliant in these areas since March 2013. And, in light of the care R.R. required, the superior court did not abuse its discretion in finding Amanda would not be capable of exercising proper and effective parental care and control in the near future because she did not adequately understand R.R.'s needs and her own mental health condition in order to appropriately care for him.

¶14        The record also reflects Amanda's housing was not appropriate for R.R.  ADES obtained a home study on the home, and the evaluator recommended against placing R.R. in the home, in part, because of the care he required.  Furthermore, Amanda's financial situation was precarious; she was unemployed, although she sold crafts and baked goods to earn approximately $150 per month and received benefits from the Arizona Health Care Cost Containment System and food stamps.

¶15        Based on our review of the record, ADES presented clear and convincing evidence supporting the superior court's termination under A.R.S. § 8-533(B)(8)(c).

B.        Best Interests

¶16        Amanda also argues ADES failed to present sufficient evidence termination was in R.R.'s best interests.  When determining whether parental termination would be in the best interests of the child, the party seeking termination must show by a preponderance of the evidence "how the child would benefit from a severance *or* be harmed by the continuation of the relationship." *Maricopa Cnty. Juvenile Action No. JS-500274*, 167 Ariz. 1, 5, 804 P.2d 730, 734 (1990); *see also* Ariz. R.P. Juv. Ct. 66(c).  The superior court found termination was in R.R.'s best interests because R.R. was adoptable and he was receiving the care he needed. The court also found that returning R.R. to Amanda might cause him distress under the then-existing situation.  Testimony from the case manager, along with other evidence, fully supports these findings.  Again, on this record, the court did not abuse its discretion in finding termination was in R.R.'s best interests.

II.        Exclusion of the Home Study

¶17        Amanda further argues the superior court should have admitted a written home study she obtained on her home.  Reviewing for abuse of discretion, we disagree.  *See Lashonda M. v. Ariz. Dep't of Econ. Sec.*, 210 Ariz. 77, 82-83, ¶ 19, 107 P.3d 923, 928-29 (App. 2005).

¶18     The superior court excluded the home study because it was untimely disclosed and the court did not believe the study would be helpful in determining R.R.'s best interests. After the termination hearing date was set for September 17, 2013, the court imposed a disclosure deadline of September 4, 2013. On the second day of the severance hearing, September 23, 2013, Amanda sought permission to submit a home study into evidence, stating she had disclosed it to ADES on September 20, 2013, but had timely disclosed the evaluator as a witness and the parties contemplated the evaluator would provide a written home study. The court excluded the report as untimely, but it nevertheless allowed the evaluator to testify about her observations concerning the suitability of Amanda's home. Under these circumstances, the court did not abuse its discretion in excluding the written home study.

## CONCLUSION

¶19     For the foregoing reasons, we affirm the superior court's termination order.



Ruth A. Willingham · Clerk of the Court
F I L E D : gsh