NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

CHRISTOPHER H., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, M.H., *Appellees*.

No. 1 CA-JV 19-0035
FILED 8-29-2019

Appeal from the Superior Court in Maricopa County
Nos. JD23002
JS18249
The Honorable Sara J. Agne, Judge

**AFFIRMED**

COUNSEL

The Stavris Law Firm, PLLC, Scottsdale
By Alison Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda Adams
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Kenton D. Jones and Judge Paul J. McMurdie joined.

---

**C R U Z**, Judge:

¶1 Christopher H. ("Father") appeals the superior court's order terminating his parental rights, challenging only the court's finding that the Department of Child Safety ("DCS") made diligent efforts to provide appropriate reunification services. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2 Father and Heidi C. ("Mother") are the parents of M.H., who was born in April 2015.[1] M.H. was born substance-exposed to methadone and was hospitalized in intensive care for six weeks. DCS took custody of M.H. when he was discharged in June 2015 after Mother and Father failed drug tests and visited M.H. fewer than five times since birth.

¶3 The superior court found M.H. dependent as to Father in February 2016. It also approved concurrent case plans of family reunification and severance and adoption. DCS offered Father substance-abuse treatment and testing, parent-aides and visitation, a neuropsychological evaluation, and a bonding assessment.

¶4 Father completed a substance-abuse assessment with TERROS and was referred to an intensive outpatient treatment program; Father explained he used marijuana daily and disclosed he used cocaine and heroin as a teenager. TERROS closed out the referral after Father refused further treatment. When Father participated in substance-abuse treatment, he disrupted the sessions and stated that he did not need treatment.

¶5 Throughout the dependency, Father never successfully completed any substance-abuse services and testified that he rebuffed treatment because it was "[not] a good fit for [him]." Father tested positive for marijuana throughout the case. The superior court found he "was

---

[1] The court's order also severed Mother's rights, but her rights are not at issue in this appeal.

generally compliant in providing DCS with his medical marijuana card," though the record reflects Father engaged in unauthorized marijuana use during certain periods. Father testified that he would stop using marijuana daily if he had custody of M.H., but he had no plan to keep M.H. away from the substance.

¶6 Father participated in supervised visits with M.H., except while Father moved to California from August 2017 to May 2018, when M.H. temporarily returned to Mother's custody. During visits, Father struggled to provide for and control M.H., needing assistance to redirect M.H.'s problematic behavior. The DCS case manager testified that she was concerned about Father's ability to parent and explained that Father had "erratic behaviors" during visits. Father also received parent-aide services, and one-on-one parenting instruction, which provided housing and employment resources, taught budgeting and time management skills, and parenting techniques.

¶7 Dr. Levitan performed two neuropsychological evaluations of Father—one in 2016 and a second in 2018—and testified that the results of both evaluations were consistent. In reviewing his background, Father explained he suffered a traumatic brain injury caused by a motorcycle accident when he was nineteen years old. Dr. Levitan diagnosed Father with Borderline Intellectual Functioning and Unspecified Neurocognitive Disorder. At trial, Dr. Levitan testified that based on the evaluation, he had "concerns about [Father's] lack of insight, about the substance use, about the severity of the neurocognitive deficits, as well as the intellectual functioning, which suggests a likely lifelong need for services or a support system." While Dr. Levitan recommended Father participate in substance-abuse counseling, solution-focused therapy, and occupational therapy, he further testified that it was unlikely Father would benefit from those services because Father did not believe in the validity of the services and showed no significant changes or improvements in over two years between Father's neuropsychological evaluations. Dr. Levitan also opined that Father's cognitive limitations were likely to persist for an indeterminate time and would prevent him from discharging his parental responsibilities in the future.

¶8 Father completed a bonding assessment in 2018. The assessment reported that M.H. "did not appear to have a healthy attachment to Father." The assessment also noted that Father "is unable to handle [M.H.] when he is acting out . . . [Father] is missing the fundamental concepts of parenting." The DCS case manager testified that DCS told Father to self-refer for occupational therapy, which DCS does not offer. The

superior court found good cause for the self-referral and explained that "occupational therapy for Father is more likely the type of service that would assist Father individually regarding his deficits from his traumatic brain injury—not the province of [DCS], which comprises services likely to assist the family as a whole." The DCS case manager also testified that Father participated in individual counseling. He completed seventeen sessions with Track House Life Counseling; typically, when a parent can benefit from that service the counselor requests an extension, but here there was no extension request.

**¶9**         DCS filed a petition to terminate Father's parental rights to M.H. on the chronic substance abuse, mental deficiency, and nine- and fifteen-months in an out-of-home placement grounds. *See* Arizona Revised Statutes ("A.R.S.") section 8-533(B)(3), (B)(8)(a), and (B)(8)(c).

**¶10**        The superior court held a contested termination hearing and received testimony from Father, Dr. Levitan, and the DCS case manager. The court issued a detailed sixteen-page ruling terminating Father's rights on all grounds alleged. The court found DCS provided Father with appropriate services and that further efforts would be futile. The court determined that DCS had made diligent efforts and found termination was in the best interests of M.H.

**¶11**        Father timely appealed. We have jurisdiction pursuant to A.R.S. §§ 8-235(A), 12-120.21(A)(1), and 12-2101(A)(1).

## DISCUSSION

**¶12**        We review the superior court's order terminating a parent's rights for an abuse of discretion. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004). We view the evidence and any reasonable inferences in the light most favorable to sustaining the court's decision, and will affirm a termination order that is supported by reasonable evidence. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009).

**¶13**        The right to custody of one's child is fundamental but not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11-12 (2000). When DCS seeks termination of a parent-child relationship, it must prove, by clear and convincing evidence, the existence of at least one statutory ground under A.R.S. § 8-533(B); *Id.* at 249, ¶ 12, and, by a preponderance of the evidence, that termination is in the best interests of the child, *Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41 (2005). Father does not contest the superior court's best-interests findings.

¶14 The superior court found DCS met its burden of proof as to four statutory grounds against Father: (1) prolonged and chronic substance abuse, A.R.S. § 8-533(B)(3); (2) mental deficiency, A.R.S. § 8-533(B)(3); (3) nine-months in an out-of-home placement, A.R.S. § 8-533(B)(8)(a); and (4) fifteen-months in an out-of-home placement, A.R.S. § 8-533(B)(8)(c). These grounds require a finding that DCS made reasonable efforts to reunify the family or that such efforts would have been futile, *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 191-92, ¶¶ 31-34 (App. 1999), and proof that DCS made a "diligent effort to provide appropriate reunification services," *Jordan C.*, 223 Ariz. at 93, ¶ 17.

¶15 Father contends the superior court erred in finding that DCS made a diligent effort to provide appropriate reunification services and primarily relies on *Mary Ellen C.*, where we reversed a termination order after finding that the Department had failed to make a reasonable effort to rehabilitate a mentally ill parent to preserve the family. 193 Ariz. at 193-94, ¶¶ 42-44. Specifically, Father argues that DCS failed to meet its obligation by not "offer[ing] him occupational therapy and solution-focused therapy" as recommended by DCS' "consulting expert." We disagree.

¶16 DCS argues Father waived his arguments by failing to challenge DCS' effort to provide services throughout the dependency and raising the issue for the first time on appeal. Regardless of waiver, reasonable evidence supports the superior court's findings that DCS made reasonable and diligent efforts to provide reunification services.

¶17 To satisfy DCS' obligation to provide reunification services, DCS must prove it "made a reasonable effort to preserve the family." *Id.* at 192, ¶ 33 (citation omitted). This requires DCS to "undertake measures with a reasonable prospect of success" and "provide a parent with the time and opportunity to participate in programs designed to improve the parent's ability to care for the child." *Id.* at 192, ¶¶ 34, 37 (citation omitted). DCS need not provide "every conceivable service." *Id.* at 192, ¶ 37. DCS is also not required to undertake rehabilitative measures that are futile. *Yavapai Cty. Juv. Action No. J-9956*, 169 Ariz. 178, 180 (App. 1991). DCS need only undertake those rehabilitative measures "with a reasonable prospect of success." *Mary Ellen C.*, 193 Ariz. at 192, ¶ 34. DCS fails to "make a concerted effort to preserve the parent-child relationship when it neglects to offer the very services that its consulting expert recommends." *Id.* at 192, ¶ 37 (quotations omitted).

¶18 In *Mary Ellen C.*, the Department had waited "more than a year after removing the child before referring a mother with a serious

mental illness for a psychological evaluation." *Id.* at 192, ¶ 35. The psychologist recommended intensive mental-health services and a psychiatric evaluation for the mother. *Id.* at 187, ¶ 9. Although the psychologist doubted that the mother could resolve her mental-health issues in less than a year, he suggested that "intensive psychiatric services might turn [her] around sooner." *Id.* at 188, ¶ 9. The Department then delayed another three months before it referred the mother to a mental-health provider. *Id.* at 192, ¶ 35. It "never followed up sufficiently to secure . . . records of her progress" and so never learned that the services being provided were inconsistent with the "intensive psychiatric services" recommended by its consultant. *Id.* at 192, ¶¶ 35-37. We reversed the severance and held that the "juvenile court could not reasonably conclude that the State made a concerted or diligent or reasonable effort to preserve the parent-child relationship" where "it neglects to offer the very services that its consulting expert recommends." *Id.* at 192-93, ¶¶ 37-42.

¶19 Unlike *Mary Ellen C.*, here, enough evidence supports the superior court's finding that DCS made diligent efforts to reunify the family. The court made detailed factual findings regarding the adequacy of services DCS provided, such as substance-abuse assessment and treatment, substance-abuse testing, neuropsychological evaluations, individual counseling, parent-aide services, supervised visitation, and a bonding assessment. Despite receiving these services, and based upon Father's unresolved substance-abuse issues and persistent and irremediable mental deficiencies of indeterminate duration, the superior court found further services would be futile and Father could not safely parent M.H.

¶20 During the termination hearing, Dr. Levitan testified that he referred Father to solution-focused therapy. Dr. Levitan explained that solution-focused therapy is a modality—"a type of individual counseling, where the counselor teaches the person skills and problem-solves with them to overcome whatever obstacle they feel they need to overcome." The record shows that DCS referred Father to Track House for individual therapy after receiving Dr. Levitan's recommendations.

¶21 Dr. Levitan also testified that he recommended Father to occupational counseling to help Father secure consistent employment. However, Father's unemployment was not the barrier to reunification found by the court. Father testified that he received social security disability income monthly, which provided for his basic needs and stable housing. Moreover, there is evidence in the record that Father received employment resources from the parent aide through TERROS.

¶22        There is also evidence in the record that Father refused to acknowledge or address his long-standing substance-abuse issues, which Dr. Levitan opined may have contributed to Father's severe cognitive impairments. Father received substance-abuse treatment referrals during the three-year dependency, and failed to complete any substance-abuse treatment program. Throughout the case, Father claimed that TERROS was not a good fit for him but did not follow through with the provider's and DCS' efforts to provide an alternative program. The record also shows Father's refusal to acknowledge or resolve his substance-abuse issues. Father testified that he had a medical marijuana card while he lived in Arizona and used marijuana daily, and he would stop using marijuana if he had custody of M.H. Yet Father testified that he did not have a plan for how to keep the child away from the substance.

¶23        Despite numerous opportunities to participate in such treatments recommended by Dr. Levitan, Father consistently avoided or dropped out of the programs. Father testified and emphasized throughout the three-year dependency that he did not believe he needed substance-abuse treatment, nor did he acknowledge how his cognitive impairments could affect his ability to parent. *See J-9956*, 169 Ariz. at 180 (explaining DCS need not undertake futile rehabilitative measures). Based upon the record, there is substantial evidence the superior court did not err. Therefore, we find no abuse of discretion.

## CONCLUSION

¶24        For the foregoing reasons, we affirm the termination of the parental relationship.



AMY M. WOOD • Clerk of the Court
FILED: AA