NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO R.R., S.R., and
E.R.

No. 1 CA-JV 23-0025
FILED 7-20-2023

Appeal from the Superior Court in Maricopa County
No. JD40085
No. JS21273

The Honorable Adele Ponce, Judge

**AFFIRMED**

COUNSEL

Vierling Law Offices, Phoenix
By Thomas A. Vierling
*Counsel for Appellant Jamil Ahmad Muhammad Rafiq*

Denise L. Carroll, Scottsdale
*Counsel for Appellant Ainun Samad*

Arizona Attorney General's Office, Tucson
By Jennifer R. Blum
*Counsel for Appellee Department of Child Safety*

_____

**MEMORANDUM DECISION**

Judge Paul J. McMurdie delivered the Court's decision, in which Presiding
Judge D. Steven Williams and Judge Samuel A. Thumma joined.

_____

**M c M U R D I E**, Judge:

**¶1**　　　　Ainun S. ("Mother") and Jamil R. ("Father") appeal the
juvenile court's order terminating their parental relationship with their
three children. We find no error and affirm.

## FACTS AND PROCEDURAL BACKGROUND

**¶2**　　　　Mother and Father are parents of three minor children. In
October 2020, the youngest child was born substance-exposed to
methamphetamine and was placed in intensive care. When the Department
of Child Safety ("Department") learned of the exposure birth, it questioned
the parents. Mother did not know what substance caused the positive test
result but stated, "someone put a curse on her," causing it. Father denied
any drug use but tested positive for amphetamines and methamphetamines
about a week after the child's birth.

**¶3**　　　　The Department tried to implement a present danger plan but
could not find a responsible adult available to help. The Department,
therefore, removed the children from the home and put them in a kinship
placement with a neighbor in the family's apartment complex.

**¶4**　　　　The Department referred the parents for reunification
services, including substance-abuse testing and treatment. Father was
resistant to participation in drug testing and either missed the testing or
tested positive several times between December 2020 and February 2021.
Mother tested positive in October 2020 but later tested negative for a time.
In January 2021, the Department assigned the parents a parent aide, but
they often missed their sessions.

**¶5**　　　　In April 2021, the juvenile court found all three children
dependent and implemented a family reunification case plan. Mother and
Father continued to miss their parent-aide sessions regularly, and Father
would not allow Mother to attend the sessions alone. The parent-aide
assignment closed in June 2021 because the parents did not improve.

¶6          During a home visit in August 2021, a Department worker noticed bruises on Mother's ankles, but Mother denied their existence. Later, the Department learned that Mother and Father were involved in a domestic violence incident in 2019 that led to Father's arrest. The Department referred Mother for domestic violence counseling, but the referral was closed for lack of contact.

¶7          By September 2021, Father's substance-abuse testing and treatment referrals had closed because of a lack of engagement. In October 2021, the Department suspected Father had been abusing drugs and asked both parents to test. Mother and Father tested positive for methamphetamines, and the tests revealed chronic use over the previous 90 days.

¶8          At this point, the Department moved to change the case plan to severance and adoption. The juvenile court found the parents had "done very little to demonstrate sobriety and engagement in services." But the court declined to grant the Department's request, instead opting to "give the parents one final opportunity to demonstrate they are going to engage in services and demonstrate that they want to reunify with the children."

¶9          The Department again referred Mother for substance-abuse treatment, but after several months, the referral was closed for lack of participation. And in January 2022, the Department referred Mother for domestic violence counseling for a second time, but it closed for lack of contact.

¶10          In February 2022, the parents began working with a parental education program, but the program reported that the parents could not "focus on the tasks at hand." The parents felt their children "were removed without cause, and [they] denied substance abuse and domestic violence in their relationship." The referral closed unsuccessfully.

¶11          In March 2022, the Department referred Mother for substance-abuse treatment for the third time. In April 2022, the Department referred Father for the fourth time. Mother completed her intake and was recommended for standard outpatient treatment, but Father did not participate. Father's referral closed in June.

¶12          In May 2022, Mother and Father absconded with the children after a supervised visit. Police located the family later that evening and arrested the parents for abducting the children. They found the children's birth certificates and social security information in a backpack and $5000 in Mother's possession, which she stated was all their money. Mother

admitted they planned to drive to North Carolina. Later, while Father was incarcerated, he threatened to kill the children's foster parents upon his release.

**¶13**         In June 2022, the Department petitioned to terminate Mother's and Father's parental rights on the 15-months' time-in-care ground. *See* A.R.S. § 8-533(B)(8)(c).

**¶14**         Mother completed an intake assessment for another domestic violence counseling referral in August 2022. Mother attended less than half her sessions between August and September and was discharged by the end of October without meeting her goals. The therapist also noted that services were unlikely to be successful because Mother "continue[d] to lie to providers and do [the] bare minimum of showing up only because she [thought] she ha[d] to."

**¶15**         The termination adjudication hearing began in November 2022. Mother continued denying the domestic violence allegations, and Father claimed Mother had repeatedly beaten him. Both parents claimed another man, not Father, had committed the 2019 domestic violence incident. And Father testified that he only tested positive for drugs because his friends drugged him at a party.

**¶16**         The parents did not identify any relatives that could act as the children's placement. Still, the case manager testified that the Department had found an adoptive home for the children that would maintain their connection to their religion and foreign culture.

**¶17**         In January 2023, the juvenile court granted the Department's termination petition. The court found both parents' testimony not credible and added that their "failure to participate in services stemmed from, not an inability to understand what the Department wanted, but their insistence that there were no problems to remedy and services were not warranted." The court then found that termination and placement in the adoptive home was in the children's best interests and terminated Mother's and Father's parental rights on the 15-months' time-in-care ground.

**¶18**         Mother and Father appealed, and we have jurisdiction under A.R.S. §§ 8-235, 12-120.21(A)(1), and 12-2101(A)(1).

## DISCUSSION

**¶19**         The juvenile court terminated Mother's and Father's parental relationships under A.R.S. § 8-533(B)(8)(c), which requires the Department

to prove by clear and convincing evidence that (1) the children were in a court-ordered out-of-home placement for at least 15 months, (2) the Department made a "diligent effort to provide appropriate reunification services," (3) the parents could not remedy the circumstances that caused the out-of-home placements, and (4) there was a "substantial likelihood that [the parents would] not be capable of exercising proper and effective parental care and control in the near future." *See Donald W. v. Dep't of Child Safety*, 247 Ariz. 9, 17, ¶ 25 (App. 2019). The court also must find by a preponderance of the evidence that termination is in the children's best interests. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149–50, ¶ 8 (2018).

## A. The Juvenile Court Did Not Abuse Its Discretion by Concluding that the Department Made a Diligent Effort to Provide Appropriate Reunification Services to Mother.

¶20 Mother argues that the juvenile court erred by terminating her parental relationship because the Department failed to prove by clear and convincing evidence that it offered reunification services. We review the court's order for an abuse of discretion, viewing the facts in the light most favorable to sustaining the court's ruling. *Calvin B. v. Brittany B.*, 232 Ariz. 292, 296, ¶ 17 (App. 2013). We will affirm if the order is supported by sufficient record evidence. *Id.*

¶21 The Department had to establish that it "made a diligent effort to provide appropriate reunification services." A.R.S. § 8-533(B)(8). Mother contends, "the Department did not submit [referrals] for the necessary domestic violence counseling." But the court found that the Department made four referrals for Mother for domestic violence counseling. At least two referrals closed because Mother never contacted the agency. The Department also referred the parents to a parental education program, but it closed unsuccessfully because they could not "focus on the tasks at hand." When Mother eventually began domestic violence counseling, she attended less than half her sessions, and the therapist reported that the services were unlikely to succeed because Mother lied and put forth minimal effort.

¶22 As the juvenile court found, these facts show that the Department appropriately tried to reunify the family. Mother has shown no error in the court's conclusion.

## B. The Court Did Not Abuse Its Discretion by Concluding that Termination Was in the Children's Best Interests.

¶23 After the juvenile court finds that a statutory termination ground exists, it must find by a preponderance of the evidence that

termination is in the children's best interests. *Alma S.*, 245 Ariz. at 149–50, ¶ 8. Termination is in the children's best interests if the children will benefit from severance or be harmed if severance is denied. *Id.* at 150, ¶ 13. To make this determination, the court "must consider the totality of the circumstances existing at the time of the severance determination." *Id.* at 150–51, ¶ 13. We do not reweigh the evidence on appeal and accept the court's factual findings if reasonable evidence supports them. *Id.* at 151, ¶ 18. But we review the sufficiency of the findings *de novo* as a mixed question of fact and law. *Francine C. v. Dep't of Child Safety*, 249 Ariz. 289, 296, ¶ 14 (App. 2020). We will affirm the termination order unless it is clearly erroneous. *Alma S.*, 245 Ariz. at 151, ¶ 18.

**¶24**        First, Mother cites *Mary Lou C. v. Arizona Department of Economic Security*, 207 Ariz. 43, 50, ¶ 19 (App. 2004), to argue that termination was not in the children's best interests because the existing placement was not meeting the spiritual and cultural needs of the children. In *Mary Lou C.*, we explained that the juvenile court could consider whether the current placement met the children's needs as a best-interests factor. 207 Ariz. at 50, ¶ 19. But this factor was just one of several examples the juvenile court could consider. We also stated that the best-interests requirement could be met if "the petitioner proves that a current adoptive plan exists for the child . . . or even that the child is adoptable." *Id.*

**¶25**        Here, the court reasonably concluded that the current placement was meeting the children's needs and that the children were adoptable. Mother's claim is, therefore, meritless.

**¶26**        Next, Father argues that the Department failed to meet its burden of proof. He points to his participation in some of the Department's programs and argues that the court "did not give sufficient weight to [his] reunification efforts." But we will not reweigh evidence on appeal. *Alma S.*, 245 Ariz. at 151, ¶ 18.

**¶27**        The court reasonably concluded that the current placement was meeting the children's needs, the children were adoptable, termination would provide them with permanency and stability, and denying termination would harm them by increasing their risk of exposure to substance abuse, domestic violence, and other harms. The court did not abuse its discretion by concluding that termination was in the children's best interests.

**C.    The Court Did Not Fundamentally Err by Not Considering a Guardianship for the Children.**

**¶28**        Finally, Father argues that the court erred by terminating his parental relationship rather than establishing a guardianship. Because Father did not raise this issue before the juvenile court, we review it only for fundamental error. *Brenda D. v. Dep't of Child Safety*, 243 Ariz. 437, 447–48, ¶¶ 37–38 (2018). Thus, to prevail, Father must establish that fundamental error exists and that it prejudiced him. *Id.* at ¶ 38.

**¶29**        Under A.R.S. § 1-601, the State may not infringe on Father's right to direct his children's upbringing "without demonstrating that the compelling government interest as applied to the child[ren] involved is of the highest order, is narrowly tailored and is not otherwise served by a less restrictive means." Father contends that guardianship would have been a less restrictive means by which the government could provide the child with permanency and stability.

**¶30**        A court, however, may establish a permanent guardianship only if "[t]he likelihood that the child would be adopted is remote or termination of parental rights would not be in the child's best interests." A.R.S. § 8-871(A)(4). And here, the juvenile court found the children are adoptable and that termination would be in their best interests. As a result, the court could not establish a guardianship.

**¶31**        On the record presented, Father has failed to show any error, let alone fundamental error resulting in prejudice.

## CONCLUSION

**¶32**        We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA