NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO H.F.

No. 1 CA-JV 23-0176
FILED 07-09-2024

Appeal from the Superior Court in Mohave County
No. B8015JD202104060
The Honorable Rick A. Williams, Judge

**AFFIRMED**

COUNSEL

Harris & Winger, P.C., Flagstaff
By Chad Joshua Winger
*Counsel for Appellant Father*

Arizona Attorney General's Office, Tucson
By Autumn Spritzer
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

---

Presiding Judge Andrew M. Jacobs delivered the decision of the Court, in which Judge Jennifer M. Perkins and Judge David D. Weinzweig joined.

---

**J A C O B S**, Judge:

**¶1**        Cody F. ("Father") appeals the juvenile court's order terminating his parental rights over H.F. for abandonment, arguing the court abused its discretion by finding termination in H.F.'s best interests. Because reasonable evidence supports the court's order and the court did not fail to consider the totality of the circumstances, as Father argues, we affirm the juvenile court's order terminating his parental rights.

## FACTS AND PROCEDURAL HISTORY

**A.      Father Did Not Maintain Contact with H.F. or DCS, Ultimately Leading DCS to Move to Terminate His Parental Rights.**

**¶2**        When H.F. was born on September 2, 2021, the Department of Child Safety ("DCS") received a report that Rachal H. ("Mother") could not care for H.F.  Through investigation, DCS discovered Mother was unstable and "detached from reality."  At no point did Father visit H.F. in the hospital, nor was DCS able to contact Father.  Mother would not provide DCS with Father's phone number or allow DCS to visit the family home.

**¶3**        On September 5, 2021, the court authorized DCS to take H.F. into temporary custody.  Four days later, DCS petitioned the court to determine that H.F. was dependent due to abuse or neglect as to Mother and Father.  After a hearing, the court found H.F. dependent.  DCS provided Mother with services, but Mother did not benefit from the services in which she engaged and refused to participate in other services. Meanwhile, DCS could not reach Father and had no interactions with him. Father contacted Mother only through unknown phone numbers and rarely saw her.  Father knew DCS had custody of H.F. but made no efforts to reunify with H.F.  Father claimed he expected Mother to reunify him with H.F. as he sought employment in other states.

**¶4**        DCS moved to terminate Mother's parental rights, claiming mental deficiencies and six months time-in-care, and moved to terminate Father's parental rights for abandonment.  *See* A.R.S. §§ 8-533(B)(1), (B)(3),

(8)(b).  The court terminated both parents' rights on these grounds in September 2022.  However, DCS shortly thereafter moved the court to vacate its order of termination because it learned H.F. was subject to the Indian Child Welfare Act ("ICWA").  The court granted DCS's motion, restoring Father's parental rights while leaving the termination proceeding in place.

**B.** **After DCS and H.F. Still Had No Contact with Father, DCS Moved to Terminate His Rights for a Second Time, Which the Juvenile Court Granted.**

**¶5**      After the court vacated the September 2022 termination order, Father did not form a relationship with H.F.  He failed to cooperate with DCS by avoiding contact, blocking the case manager's phone number, and failing to create an email account for communication.  DCS made efforts to pay for Father's flight from Missouri to Arizona to visit H.F., but Father refused.  DCS also requested a visit to his home pursuant to the Interstate Compact on the Placement of Children ("ICPC") to evaluate whether it was sound for H.F.  Though the ICPC unit reported Father's home was unsound and smelled like urine, Father made no changes to the home.  Father intended to make Mother H.F.'s primary caregiver if he obtained custody of her even though Mother was unstable.

**¶6**      In February 2023, DCS moved to terminate both parents' rights based on the same grounds.  In August 2023, the court held a hearing on DCS's motion.  Father testified he was working out of state to provide for H.F. and had tried to visit H.F. only for DCS to cancel the visit, and wanted H.F. to grow up knowing the Cherokee language and traditions.  DCS, meanwhile, introduced testimony that since the fall of 2022, Father did not contact H.F., DCS, or his court-appointed attorney, and failed to attend hearings.  The Cherokee Nation's ICWA specialist explained that continuing parental custody would cause H.F. emotional and/or physical damage.

**¶7**      The court granted DCS's motion to terminate both parents' parental rights.  The juvenile court found termination would benefit H.F. by furthering an adoption plan, thus providing H.F. permanency and stability.  The court also found H.F. was living in an adoption placement that met all her needs, and that H.F. would be adoptable if her current placement fell through.  The court found that not terminating both parents' rights would be harmful because H.F. spent most of her life out of Mother's and Father's care and both parents lacked a relationship with H.F.

3

**¶8**        Father timely appealed.  We have jurisdiction.  A.R.S. §§ 8-235, 12-120.21, and 12-2101(A)(1); Ariz. Const. art. 6, § 9.

## DISCUSSION

**¶9**        Father appeals the juvenile court's order terminating his rights over H.F. on the grounds that there was insufficient evidence to find termination in H.F.'s best interests and that the juvenile court failed to appropriately weigh the totality of the circumstances when considering H.F.'s best interests.

**¶10**        We review a best-interests finding for an abuse of discretion and reverse only if there is "no reasonable evidence to support [the findings]." *Mary Lou C. v. Arizona Dep't of Econ. Sec.*, 207 Ariz. 43, 47 ¶ 8 (App. 2004) (citations omitted).  When considering the child's best interests, the court must consider the totality of the circumstances, which includes the child's stability and security. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150 ¶¶ 12-13 (2018).  It is in a child's best interests to terminate parental rights if the child would either be benefitted by terminating the relationship or harmed by its continuation.  *Id.* at 150 ¶ 13.  The State may show termination is in a child's best interest by showing either that they are adoptable or in an adoptive placement. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4 ¶ 12 (2016).

**¶11**        Father's first argument fails because there is reasonable evidence in this record to support the court's findings.  First, DCS spent two years trying to help Father form a relationship with H.F., but he refused to cooperate with DCS.  Second, the court found adoption would benefit H.F. because it would give her permanency and stability, her current adoptive placement was meeting her needs, and she would be adoptable if the current placement did not work out.  *Alma S.*, 245 Ariz. at 150 ¶ 13; *Demetrius L.*, 239 Ariz. at 4 ¶ 12.  Third, the court found that staying in Father's care would harm H.F. because she had been out of Mother's and Father's care for almost her entire life, and neither parent had a relationship with her.  *Alma S.*, 245 Ariz. at 150 ¶ 13.  Fourth, as DCS points out, Father concedes he failed to maintain a relationship with H.F. though he knew H.F. existed, and did not visit her, even after DCS offered to pay and planned for Mother, who could not care for H.F., to be her primary caregiver.  The court did not abuse its discretion because reasonable evidence supported its findings that terminating Father's rights was in H.F.'s best interests. *Mary Lou C.*, 207 Ariz. at 47 ¶ 8.

¶12　　　Father's second argument likewise fails.  By making each of those findings, the court weighed the totality of the circumstances.  *Alma S.*, 245 Ariz. at 150 ¶ 12.  It did so by exploring Father's dealings with DCS and his degree of effort to create a bond with H.F., the potential benefits of adoption, and the character of the parental relationships with H.F.

## CONCLUSION

¶13　　　For these reasons, we affirm the juvenile court's order terminating Father's parental rights.



AMY M. WOOD • Clerk of the Court
FILED:　AGFV