NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JONATHAN L., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY,[1] N.L., Y.L., *Appellees*.

No. 1 CA-JV 15-0090
FILED 9-3-2015

Appeal from the Superior Court in Maricopa County
No. JD23618
The Honorable Susanna C. Pineda, Judge

**AFFIRMED**

COUNSEL

Robert D. Rosanelli, Attorney at Law, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Laura J. Huff
*Counsel for Appellee Department of Child Safety*

---

[1]     Pursuant to S.B. 1001, Section 157, 51st Leg., 2nd Spec. Sess. (Ariz. 2014) (enacted), the Department of Child Safety (DCS) is substituted for the Arizona Department of Economic Security (ADES) in this matter. *See* ARCAP 27. For consistency, we refer to DCS in this decision even where, at the time, actions were taken by ADES.

---

**MEMORANDUM DECISION**

Presiding Judge Jon W. Thompson delivered the decision of the Court, in which Judge Donn Kessler and Judge Samuel A. Thumma joined.

---

**T H O M P S O N**, Judge:

¶1             Jonathan L. (Father) appeals from the juvenile court's order terminating his parental rights as to N.L. and Y.L. (collectively the Children).  For the following reasons, we affirm.

### FACTS[2] AND PROCEDURAL HISTORY

¶2             Leah S. (Mother) and Father are married and have two biological children together.[3]  In 2008 and 2009, Mother and Father adopted two children from Ethiopia - N.L., born in March 2008, and Y.L., born in June 2008 (the Children).  Father re-entered military service in 2010 and was stationed in Afghanistan from March 2011 to January 2012.  After Father completed his service, he and Mother moved from Arizona to Oregon.

¶3             In March 2012, Mother intentionally overdosed by taking prescription pills in front of one of her biological children.  Mother had a long history of prescription drug abuse and mental health issues.[4]  After her hospitalization following the overdose, Mother completed one week of in-patient substance abuse treatment.  An allegation that Mother was negligent in the care of her biological child was filed with the Oregon Department of Human Services (DHS).  The DHS report specified that

---

[2]     We review the evidence and draw all reasonable inferences in the light most favorable to upholding the juvenile court's factual findings. *Jesus M. v. Ariz. Dep't of Econ. Sec.,* 203 Ariz. 278, 282, ¶ 13, 53 P.3d 203, 207 (App. 2002).

[3]     Neither Mother nor her two biological children are parties to this appeal.

[4]     Before moving to Oregon, three reports of Mother's physical abuse, neglect of the Children, and mental illness had been filed with DCS in 2010 and 2011 and 2012,  but were deemed unsubstantiated by DCS.

Father was aware of Mother's mental health issues and prescription drug abuse, and that he agreed to implement a safety plan to supervise all contact between Mother and the Children until her mental health issues and prescription drug abuse were "under control." DHS provided in-home services to Mother until May 2012 when Mother and Father were released from supervision.

¶4 Three months later, Mother and Father separated, and Mother moved to Arizona with the Children. Shortly thereafter, Father moved to San Diego. Father returned to Arizona approximately once a month to visit the Children.

¶5 On April 30, 2013, DCS took the Children into custody after receiving a report that they had been physically abused. A DCS case manager observed that N.L. had fresh and healing injuries to his back, was extremely thin and malnourished, and had a very flat affect. Y.L. had circular bruises on both forearms and broken blood vessels around her eye. A medical examination revealed that Y.L. also had three concerning scars on her right upper arm; N.L. had several concerning scars in various locations; and N.L. was thin and malnourished with developmental delays "likely related to chronic malnutrition as an infant."

¶6 DCS learned that Y.L. told police investigators that Mother hits N.L. with a spoon, and Father hit N.L. in the head and made him bleed. N.L. was essentially non-verbal and was unable to be interviewed by the police. DCS also discovered that the Children had various special needs. Despite their awareness of the Children's special needs, neither Mother nor Father sought services.

¶7 DCS filed a dependency petition based on Father's neglect of the Children and his failure to protect them from abuse, and Mother's neglect, physical and emotional abuse, mental health issues, and substance abuse. The juvenile court found that the Children were dependent, noting Father and Mother stipulated to the dependency based on Mother's mental health issues and Father's inability to care for the children due to their special needs.

¶8 DCS established a case plan for Father of reunification and offered him the following services: supervised visitation; a psychological evaluation; and counseling. Father attended a visitation in November 2013, however, the following month DCS suspended Father's visitation with Y.L. because of her extremely negative reaction and violent behavior following the visit. Although DCS accommodated Father's request for a visitation

with N.L. in February 2014, Father failed to attend the visitation. Thereafter, Father did not request visitation with N.L., did not inquire into the welfare of the Children, and did not send the Children any gifts or letters.

**¶9** In April 2014, DCS filed a motion to terminate Father's parental rights.[5] The motion, as amended, alleged five grounds for termination: (1) abuse of failure to protect; (2) abandonment; (3) neglect; (4) nine months time-in-care; and (5) fifteen months time-in-care. After a contested severance hearing, the juvenile court found that DCS had established the grounds for severance, and that termination was the Children's best interests. Accordingly, the juvenile court terminated Father's parental rights to the Children.

**¶10** Father timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) sections 8-235 (Supp. 2014), and 12-2101(A)(2) (Supp. 2013).

## DISCUSSION

**¶11** The juvenile court may terminate the parent-child relationship only upon finding that clear and convincing evidence demonstrates at least one statutory ground for severance and that severance is in the child's best interests. A.R.S. § 8–533(B) (Supp. 2014); *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22, 110 P.3d 1013, 1018 (2005). We review the juvenile court's termination order for an abuse of discretion. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8, 83 P.3d 43, 47 (App. 2004) (citation omitted). Under A.R.S. § 8–533(B)(2), the juvenile court may terminate parental rights if a parent "has neglected or wil[l]fully abused a child." "[A]buse includes serious physical or emotional injury or situations in which the parent knew or reasonably should have known that a person was abusing or neglecting a child." A.R.S. § 8–533(B)(2).

**¶12** Father argues that the juvenile court's finding that he had willfully abused or failed to protect the Children was "clearly erroneous and contrary to the substantial evidence in the record" because he "had no reason to believe that the children's mother would abuse or neglect the

---

[5] Mother signed a consent for adoption and termination of her parental rights to N.L. and Y.L., and the juvenile court subsequently terminated Mother's parental rights.

children and [he] did not place them in a situation where he reasonably should have known abuse or neglect would occur."[6] We disagree.

¶13 First, substantial evidence supports the trial court's finding that the Children were abused. As noted above, the DCS case manager testified that N.L. had physical injuries, was very malnourished and small for his age. Similarly, a case manager also observed that Y.L. had physical injuries. Additionally, both Mother and Father failed to provide the necessary therapy and services for the Children's special needs.

¶14 Second, although Father argues he "could not predict that the children's mother would abuse or neglect the children," Father testified that he was aware of Mother's history of prescription drug abuse and mental illness. Father also admitted that he agreed to a safety plan with the Oregon DHS whereby he would supervise all of Mother's contact with N.L. and Y.L. because of her substance abuse problem. Despite his knowledge of Mother's substance abuse problem and her history of mental illness, Father left the Children in the sole custody of Mother in order to continue his education out-of-state. Thereafter, Father maintained only minimal contact with the Children, and has made no effort to contact or inquire about the Children's welfare since February 2014.

¶15 Father's actions during the pendency of this case support a finding that he is unable to protect the Children from abuse. At the severance hearing, Father continued to defend Mother, denied that she abused the Children, denied Mother had a substance abuse problem, and claimed that Mother "loves those children and she gave them . . . everything she could." Father's refusal to take any responsibility for his children's injuries supports an inference that he would be unable or unwilling to protect the children from future abuse or neglect. Thus, reasonable evidence supports the juvenile court's finding that Father "knew or reasonably should have known that a person was abusing or neglecting" the Children.[7] *See* A.R.S. § 8–533(B)(2).

---

[6] Father has not appealed the finding that termination was in the children's best interest. We therefore accept that finding and do not address it further. *See Schabel v. Deer Valley Unified Sch. Dist. No. 97*, 186 Ariz. 161, 167, 920 P.2d 41, 47 (App. 1996) ("Issues not clearly raised and argued in a party's appellate brief are waived.").

[7] Only one statutory ground need be proven to justify the termination of a parent-child relationship. *Kent K.*, 210 Ariz. at 280, ¶ 1, 110 P.3d at 1014

**CONCLUSION**

¶16        Based upon the foregoing, we affirm the juvenile court's termination order.



**Ruth A. Willingham** · **Clerk of the Court**
F I L E D : ama

---

(citing A.R.S. § 8–533(B)).  Because we determine severance was appropriate based on A.R.S. § 8–533(B)(2), we need not discuss the other grounds for severance.  *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, ¶ 3, 53 P.3d 203, 205 (App. 2002).