NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

VANETTA H., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY[1], J.H., N.H., K.H., *Appellees*.

No. 1 CA-JV 15-0115
FILED 10-22-2015

Appeal from the Superior Court in Mohave County
No. S8015JD201200050
The Honorable Richard Weiss, Judge

**AFFIRMED**

COUNSEL

Law Offices of Heather C. Wellborn, PC, Lake Havasu City
By Heather C. Wellborn
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda L. Adams
*Counsel for Appellee Department of Child Safety*

---

[1] Pursuant to S.B. 1001, Section 157, 51st Leg., 2nd Spec. Sess. (Ariz. 2014) (enacted), the Department of Child Safety ("DCS") is substituted for the Arizona Department of Economic Security in this matter. *See* ARCAP 27. For purposes of convenience, we will consistently refer to DCS in the body of this decision.

---

## MEMORANDUM DECISION

Presiding Judge Donn Kessler delivered the decision of the Court, in which Judge Andrew W. Gould and Judge *Pro Tempore* Dawn M. Bergin[2] joined.

---

**K E S S L E R**, Judge:

¶1        Vanetta H. ("Mother") appeals the juvenile court's order terminating her parental rights to J.H., N.H., and K.H. (collectively "the children").[3]  For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

¶2        Mother is the biological parent of J.H., born in 2008, N.H., born in 2011, and K.H., born in 2012.  In September 2012, DCS filed a dependency petition alleging that Mother was unable to parent the children due to neglect as a result of substance abuse and mental illness.[4]     In October 2012, the juvenile court found the children dependent and instituted a case plan with the goal of family reunification.  Mother was offered a variety of services to aid in the reunification goal, including individual counseling, substance abuse classes, supervised visitation, and random drug testing.  Mother successfully complied with the requirements of the case plan, the children were returned to her care, and the dependency petition was dismissed in September 2013.

¶3        In February 2014, DCS filed another dependency petition alleging that Mother was again unable to parent the children due to neglect as a result of substance abuse and mental illness.  In April 2014, the juvenile court found the children dependent, removed them from Mother's care, and instituted another case plan with the goal of family reunification.

---

[2] The Honorable Dawn M. Bergin, Judge Maricopa County Superior Court, was authorized by the Chief Justice of the Arizona Supreme Court to participate in the disposition of this appeal pursuant to the Arizona Constitution, Article 6, Section 3, and Arizona Revised Statutes ("A.R.S.") sections 12–145 to –147 (2003).

[3] The children's fathers' parental rights are not at issue in this appeal.

[4] The dependency petition also included Mother's other biological children, M.C., born in 1996, and J.C., born in 1998.  M.C. and J.C. are not involved in this appeal.

Mother was again offered a variety of services to aid in reunification, including substance abuse services and counseling, individual counseling, mental health services, parenting classes, supervised visitation, and random drug testing.

**¶4**        In October 2014, due to Mother's minimal participation in reunification services, DCS filed a motion to terminate her parental rights based on four statutory grounds: (1) neglect; (2) a history of chronic abuse of dangerous drugs; (3) out-of-home placement for more than six months; and (4) prior removal.  *See* Ariz. Rev. Stat. ("A.R.S.") § 8-533(B) (Supp. 2015).[5]

**¶5**        At the termination hearing, DCS presented evidence that Mother completed an intake at Southwest Behavioral Health and attended twelve substance abuse education classes.  However, DCS also presented evidence that from March through September 2014, Mother sporadically participated in random drug testing[6] and declined substance abuse services with Arizona Families F.I.R.S.T.[7]  The evidence also showed that although Mother attended a sober living facility, she was dismissed for not complying with the rules regarding cell phones.  Further, Mother's attendance at supervised visitation with the children was inconsistent, and during the visits she minimally parented the children, took frequent breaks, and relied entirely upon her support system to provide food and basic necessities for the children.

**¶6**        DCS also presented evidence that from October 2014 through January 2015, Mother continued to sporadically participate in random drug testing,[8] even though she attended a residential substance abuse treatment

[5] We cite to the current versions of all statutes unless they were amended after the underlying events in a manner which would affect the result of this appeal.

[6] Between March 3, 2014 and September 11, 2014, Mother tested positive twice for methamphetamine and amphetamine, failed to test on fifteen occasions, and tested negative on sixteen occasions.  Per DCS policy, all missed tests are considered positive.

[7] Mother's first referral to Arizona Families F.I.R.S.T. was closed due to their inability to locate Mother.  Mother's second referral to Arizona Families F.I.R.S.T. was closed because Mother declined services.

[8] Between November 3, 2014 and January 28, 2015, the record shows Mother failed to test on two occasions and completed twelve negative tests, which include the tests Mother completed during the residential substance abuse treatment program.

program for thirty-five days. Although the record shows Mother completed some parenting classes and attended supervised visitation with the children, she was still only able to provide for the basic needs of the children via her support system. While Mother demonstrated some improvement in participation in services, the DCS case manager testified Mother failed to continually participate in counseling services and failed to provide stable housing or employment. Mother resides with the children's grandmother, who is not an approved DCS placement due to substance abuse and mental health concerns.

¶7        The juvenile court terminated Mother's parental rights based on all four grounds alleged in DCS' motion and found that termination was in the best interests of the children. Mother timely appealed. We have jurisdiction pursuant to A.R.S. §§ 8-235(A) (2014), 12-120.21(A)(1) (2003), and 12–2101(A)(1) (Supp. 2015).

## DISCUSSION

¶8        A parent's interest in the care and custody of their child is fundamental, *Santosky v. Kramer*, 455 U.S. 745, 753 (1982), however, it is not absolute, *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶ 12 (2000). The juvenile court must find at least one of the statutory grounds provided in A.R.S. § 8–533(B) by clear and convincing evidence to justify the termination of parental rights. *Michael J.*, 196 Ariz. at 249, ¶ 12. The juvenile court must also find by a preponderance of the evidence that termination is in the child's best interest. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005).

¶9        Mother appeals the juvenile court's finding of termination on all four statutory grounds, as well as termination being in the children's best interest. "If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds." *Jesus M.*, 203 Ariz. at 280, ¶ 3. Therefore, we need only address the finding of termination on prior removal as set forth in A.R.S. § 8–533(B)(11).

¶10        The juvenile court is in the best position to weigh evidence and judge credibility, thus, we "will accept the juvenile court's findings of fact unless no reasonable evidence supports those findings, and we will affirm a severance order unless it is clearly erroneous." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002). We "will not reweigh the evidence but will look only to determine if there is evidence to sustain

4

the court's ruling." *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004).

## I. Prior Removal

**¶11** Section 8–533(B)(11) provides the juvenile court must find all of the following by clear and convincing evidence before terminating parental rights:

> (a) The child was cared for in an out-of-home placement pursuant to court order. (b) The agency responsible for the care of the child made diligent efforts to provide appropriate reunification services. (c) The child, pursuant to court order, was returned to the legal custody of the parent from whom the child had been removed. (d) Within eighteen months after the child was returned, pursuant to court order, the child was removed from that parent's legal custody, the child is being cared for in an out-of-home placement under the supervision of the juvenile court, the division or a licensed child welfare agency and the parent is currently unable to discharge parental responsibilities.

**¶12** Mother contends that because she wanted to remain sober and continue raising the children, there was not clear and convincing evidence she was unable to discharge her parental responsibilities. *See* A.R.S. § 8-533(B)(11)(d). Despite this narrow argument, we have reviewed the record to ensure that all of the elements of A.R.S. § 8–533(B)(11) were proven at the termination hearing.

**¶13** The record supports the juvenile court's conclusion that all of the elements for severance based on prior removal were proven. Pursuant to the juvenile court's order in the first dependency, the children were deemed dependent and were to be cared for in an out-of-home placement on October 9, 2012. *See* A.R.S. § 8-533(B)(11)(a). The record also shows that during that time DCS, who was responsible for the care of the children, made diligent efforts to provide appropriate reunification services to Mother, such as individual counseling, substance abuse treatment, supervised visits, and random drug testing. *See* A.R.S. § 8-533(B)(11)(b). Mother testified to the fact that the children were removed from her care, she participated in services provided by DCS, and regained custody of her children. *See* A.R.S. § 8-533(B)(11)(c). Additionally, the record shows that within eighteen months of the children being returned to Mother in September 2013, DCS again removed the children from Mother's care and

custody, the children were being cared for by an out-of-home placement, and had again been declared dependent by the court. *See* A.R.S. § 8-533(B)(11)(d).

**¶14**   Mother contends that one statutory element of prior removal was not met because she wants to remain sober and continue to raise her children. *See* A.R.S. § 8-533(B)(11)(d) (requiring evidence that the parent is currently unable to discharge parental responsibilities). We disagree.

**¶15**   The juvenile court found, and there is evidence to show Mother has demonstrated an ongoing twenty-year battle with substance abuse of methamphetamine. During the second dependency, she failed to consistently participate in random drug testing, tested positive twice for methamphetamine and amphetamine, and did not fully participate in substance abuse treatment and other services provided by DCS.

**¶16**   Apart from Mother's substance abuse issues, the evidence established she has been unable to provide a safe and stable home for the children. The record shows that at the time of the termination hearing Mother was still residing with the children's grandmother, whose house was not approved by DCS and whom also presented safety concerns due to substance abuse and mental health. Furthermore, because Mother was unemployed, she had to rely on the grandmother's social security income to support not only her basic needs, but the children's as well. The DCS caseworker testified that Mother has not demonstrated behavioral changes to show she can safely parent the children. On this record, the evidence supports the juvenile court's finding that Mother was unable to discharge her parental responsibilities under A.R.S. § 8–533(B)(11)(d).

**¶17**   The juvenile court's findings are based on reasonable evidence to affirm its decision to terminate Mother's parental rights based on prior removal.

## II.  Best Interest of the Children

**¶18**   Mother argues termination was not in the best interest of the children because she wants to remain sober and parent the children with whom she holds a significant bond.

**¶19**   To justify termination, DCS must demonstrate, by a preponderance of evidence, how the children would "benefit from a [termination] *or* be harmed by the continuation of the [parent/child] relationship." *Maricopa Cty. Juv. Action No. JS–500274*, 167 Ariz. 1, 5 (1990); *Kent K.*, 210 Ariz. at 284, ¶ 22 (stating burden of proof is preponderance of

the evidence).  The benefit derived from termination may include "evidence that the child is adoptable and the existing placement is meeting the child's needs."  *Bobby G. v. Ariz. Dep't of Econ. Sec.*, 219 Ariz. 506, 511, ¶ 15 (App. 2008).

**¶20**        The juvenile court found that termination was in the children's best interest on the basis of stability and permanency.  The court stated and the evidence showed Mother's support system was delegated the responsibility of the parent, rather than functioning as a true secondary support system.  Mother's unemployment alongside the lack of approved housing further demonstrated Mother's inability to provide for the needs of the children.  The DCS caseworker testified that termination was in the children's best interest because of Mother's "substance abuse issues, lack of stability, and her inability to safely parent the children."   Additionally, the caseworker testified that the children were adoptable, and would benefit from a permanent and stable home to help them overcome their behavioral issues from their time in Mother's care.  Finally, there is evidence the children's current placement meets their educational, medical, and mental health needs.

**¶21**        Thus, there is reasonable evidence to support the juvenile court's finding that severance of Mother's parental rights is in the best interest of the children.

## CONCLUSION

**¶22**        For the foregoing reasons, we affirm the juvenile court's severance of Mother's parental rights to the children.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama