NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

MOHAMMAD K., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, C.C., J.O., J.J., C.K., N.K., M.K.,
*Appellees*.

No. 1 CA-JV 15-0401
FILED 7-28-16

Appeal from the Superior Court in Maricopa County
No. JD511307
The Honorable Karen L. O'Connor, Judge

**AFFIRMED**

COUNSEL

John L. Popilek, PC, Scottsdale
By John L. Popilek
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Amber E. Pershon
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Andrew W. Gould and Judge Randall M. Howe joined.

---

**C A T T A N I**, Judge:

¶1        Mohammad K. ("Father") appeals from the superior court's order terminating his parental rights to three of his children. For reasons that follow, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2        Father and Channtell K. ("Mother") began their relationship in 2010. Mother had three older children from previous relationships— C.C., J.O., and J.J.—who lived with the couple; Father had four children from previous relationships who lived out of state. Mother and Father are the biological parents of C.K., born in March 2012, N.K., born in March 2013, and M.K., born in December 2014.

¶3        In late August 2013, Father took N.K. to the hospital because the child's arm was limp and swollen. X-rays showed that N.K. had suffered multiple fractures consistent with non-accidental trauma and potentially indicative of abuse: an acute fracture to N.K.'s right elbow, a healing fracture to his right forearm, healing fractures to the back of two ribs, and a healing fracture to his lower right leg. The combination of rib and leg fractures particularly suggested abuse.

¶4        When Father and Mother could not provide an explanation for the five-month-old child's multiple broken bones, the hospital contacted the Department of Child Safety ("DCS"), and DCS took N.K. and the older children into care. DCS took M.K. into care immediately after his birth in December 2014.

¶5        The hospital performed additional testing to find the cause of N.K.'s fractures, but the results did not support any medical cause (e.g., nutrient deficiencies or bone abnormalities). A repeat x-ray in September showed another fracture to N.K.'s upper right leg and a possible rib fracture, which the doctor posited could have occurred before N.K.'s removal, and simply became more clearly visible over time as they began to heal. Subsequent x-rays in February and November 2014—after N.K.

had been in an out-of-home placement for a matter of months—showed no new fractures.

¶6            The older children also showed signs of abuse.  C.C. told a police officer that Mother and Father hit the children with a belt as punishment.  C.C. also exhibited fear behavior consistent with having witnessed abusive situations.  J.O. similarly indicated that he would be "whooped with a belt" as punishment, and he had several long, linear hyperpigmented marks on his legs and a mark on his temple that suggested patterned injuries resulting from impacts with a stick or the side of a belt.  He also exhibited an abnormal fear of belts, suggesting previous trauma involving a belt.  J.J. stated that Father "'whoops' him with a stick all over."  Like J.O., J.J. had several linear and curvilinear marks and scars on his back, buttocks, and thighs, suggesting patterned injuries resulting from non-accidental trauma, consistent with being hit with a stick.  J.J. exhibited fear of belts and sticks, and C.K. was afraid of belts.

¶7            DCS sought to terminate Father's parental rights to C.K., N.K., and (after his birth) M.K., as relevant here, on grounds that he had willfully abused a child or had failed to protect a child from willful abuse.  *See* Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(2).[1]  At the severance trial, Father acknowledged using physical discipline—"whooping"—on the children, although he characterized it as a last resort.  He stated that he would spank the children with his hand, not an object, but admitted hitting each child with a belt once.  He also testified that he and Mother shared responsibility for punishing the children equally, and that although Mother also used physical punishment on a few occasions, "[s]he never crossed the line."  Mother acknowledged "whooping" the children with a belt, but only approximately four times.

¶8            Father testified that he was the primary caretaker of the children after N.K. was born, but had hired a babysitter for about two weeks immediately before N.K.'s fractures were discovered.  Father stated that he had no idea how N.K. had been injured, although he noted that N.K. had been born premature.  He also noted that, beginning at two or three months old, N.K. would cry and scream in pain when being picked up, but that the doctor thought it was related to gas or bowel issues.  Father acknowledged pleading guilty in 2008 to corporal injury to one of his other, out-of-state children, although he denied actually hitting that child.

---

[1]            Absent material revisions after the relevant date, we cite a statute's current version.

**¶9** Mother and Father presented a report from an expert who concluded N.K. was not a victim of child abuse, and that his fractures could be explained medically by temporary bone fragility. A board certified child abuse pediatrician testified to the contrary, however, stating that temporary brittle bone is not a legitimate medical condition and that N.K.'s fractures were highly specific for child abuse. The pediatrician further testified that none of the follow-up testing that was conducted suggested any bone abnormalities that would explain N.K.'s fractures, and that the absence of additional fractures after N.K. was removed was inconsistent with a genetic condition causing bone fragility.

**¶10** The superior court found grounds for termination based on willful abuse or failure to protect from willful abuse, found that severance would be in each child's best interests, and terminated Father's parental rights to C.K., N.K., and M.K.[2] Father timely appealed, and we have jurisdiction under A.R.S. § 8-235.

## DISCUSSION

**¶11** The superior court may terminate the parent–child relationship if there is clear and convincing evidence of at least one statutory ground for severance and a preponderance of the evidence shows severance to be in the child's best interests. A.R.S. § 8–533(B); *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). We review the superior court's severance ruling for an abuse of discretion, deferring to the court's credibility determinations and factual findings. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004); *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).

---

[2] At the same hearing, the court found M.K. to be dependent as to Mother and Father. Father does not challenge the dependency finding on appeal.

The court found additional grounds for severance as to C.K. and N.K. based on 15 months' time in care under A.R.S. § 8-533(B)(8)(c). We need not address the ground because we affirm on the basis of abuse or failure to protect. *See Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 251, ¶ 27 (2000).

The superior court also terminated Mother's parental rights to C.C., J.O., J.J., C.K., N.K., and M.K. Although she appealed the severance ruling, this court later dismissed her appeal after her attorney certified that he had found no non-frivolous issues to raise.

¶12 Under A.R.S. § 8-533(B)(2), severance may be justified if "the parent has neglected or wilfully abused a child." The statute expressly includes "situations in which the parent knew or reasonably should have known that a person was abusing or neglecting a child." *Id.* "Abuse" includes causing or allowing either physical or serious emotional injury. A.R.S. §§ 8-201(2), -533(B)(2). Abuse of one child supports termination of parental rights to other children, even absent evidence that the other children were abused. *Linda V. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 76, 79, ¶ 14 (App. 2005).

¶13 Father argues the superior court erred because the evidence did not establish the cause of the children's injuries; he does not challenge the court's best interests determination. He asserts that both DCS and the court simply assumed that "the children showed evidence of injuries, therefore, Father either was the abuser or failed to protect the children."

¶14 We disagree. The evidence showed that N.K.'s fractures were highly specific for child abuse. Additional testing effectively ruled out other, non-trauma medical causes. And although Father and Mother presented a contrary medical opinion concluding that N.K.'s injuries did not indicate abuse, the superior court weighed the conflicting evidence and concluded otherwise. *See Jesus M.*, 203 Ariz. at 280, ¶ 4.

¶15 Moreover, substantial evidence showed that Father was responsible for the children's injuries or should have known of the abuse. Although Father argues that Mother was responsible for the physical discipline and that he did not know and could not have known if she injured the children, he was the children's primary caretaker at the time they were injured. Additionally, the older children stated that both Father and Mother used a belt to impose physical punishment; J.J. specified that Father punished him by hitting him with a stick. Two of the older children had patterned marks and scars on their bodies consistent with being hit with a belt or stick, and all four older children exhibited abnormal fear behavior, three of them specifically triggered by belts. Father himself acknowledged "whooping" the children. Although he denied doing so regularly, using an implement like a stick or belt, or ever leaving a mark, there was evidence to the contrary, and we defer to the superior court's assessment of conflicting evidence and witness credibility. *Id.*

¶16 Although, as DCS acknowledged, Father cared deeply for the children, participated in services, and made significant progress in other areas, the record supports the superior court's determination that severance

was warranted on grounds of abuse.  Accordingly, the court did not err by terminating Father's parental rights to C.K., N.K., and M.K.

## CONCLUSION

¶17     The judgment is affirmed.



Ruth A. Willingham · Clerk of the Court
F I L E D : jt