NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

TIFFANY S., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, I.G., I.G., I.G., *Appellees.*

No. 1 CA-JV 16-0219
FILED 1-19-2017

Appeal from the Superior Court in Maricopa County
No. JD27522
The Honorable John R. Ditsworth, Judge

**AFFIRMED**

COUNSEL

Vierling Law Offices, Phoenix
By Thomas A. Vierling
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Amber E. Pershon
*Counsel for Appellee Department of Child Safety*

—————————————

**MEMORANDUM DECISION**

Presiding Judge Kent E. Cattani delivered the decision of the Court, in which Judge Lawrence F. Winthrop and Chief Judge Michael J. Brown joined.

—————————————

**C A T T A N I**, Judge:

¶1         Tiffany S. ("Mother") appeals the superior court's order terminating her parental rights to three of her children.  For reasons that follow, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2         Mother and Isaias G. ("Father") are the biological parents of an older son (born in December 2010), a daughter (born in October 2012), and a younger son (born in July 2014).[1]  The Department of Child Safety ("DCS") initially became involved with the family in late 2013 with concerns of substance abuse and domestic violence.  The superior court found all three children to be dependent.

¶3         Mother had used marijuana since her early teens, and she used marijuana and/or spice (a synthetic form of marijuana) regularly for around ten years, including during the dependency.  Mother began using methamphetamine as well at age 18—when her relationship with Father began—and she continued using methamphetamine for four years, until October 2013.

¶4         Mother's relationship with Father was characterized by substantial physical domestic violence.  The parents would "punch, scratch and smack" each other, sometimes in front of the children.  The violence had led to eviction from housing as well as multiple instances of police involvement; although Father was generally the aggressor, both parents had been arrested for domestic violence in the past.  The violence continued

—————————————

[1]     Father's parental rights were previously terminated, and he is not a party to this appeal.

        Mother has a fourth child, T.S., who the superior court found to be dependent at the time of the severance ruling at issue in this case.  Mother has not challenged the dependency ruling on appeal.

during the ongoing dependency, with Father punching or kicking Mother in the stomach in May 2014, while she was pregnant with the younger son.

¶5        DCS offered Mother multiple services to address these issues, including drug testing and treatment, case aide, parent aide with parenting classes (and visit-only parent aide), psychological evaluation, and individual counseling.  Mother's participation in these services, however, was sporadic.

¶6        From December 2013 through March 2014, at the beginning of the dependency proceedings, Mother largely failed to participate in services.  She completed drug testing only sporadically, her drug treatment referral was closed for lack of contact, and she did not participate in visitation with the children.

¶7        From April 2014 through August 2014, while she was pregnant with the younger son, Mother began to engage in services.  She participated regularly in drug testing, and engaged in visitation with the older son and daughter.  Additionally, she left Father after the May 2014 domestic violence incident to live in a shelter, where she participated in domestic violence classes.

¶8        From August 2014 to June 2015, however, Mother again stopped participating in services, and in December 2014, DCS moved to terminate her parental rights.  The only service she completed during this period was a psychological evaluation in September 2014.  Dr. Thal, the psychologist, noted Mother's history of sexual abuse and the domestic violence in her long-term relationship with Father, as well as her years-long history of substance abuse.  He opined that Mother's "compulsive drug use and unstable relationship significantly impeded her parenting abilities," and that she used drugs as a coping mechanism, leaving her with a high risk of relapse absent appropriate treatment.  Dr. Thal recommended that Mother remain sober, complete comprehensive drug treatment and continue participating in 12-step programs, complete individual therapy addressing her sexual abuse trauma and anger management, and avoid reuniting with Father.

¶9        Mother stopped contacting DCS after the younger son was removed from her care following his July 2014 birth and was placed with the other children living with their maternal grandparents.  From August 2014 through June 2015, Mother stopped participating in drug testing despite multiple referrals, and she admitted using marijuana and spice during that time.  Mother's drug treatment referral was closed for non-

participation, and a subsequent referral was closed in February for the same reason. She left the domestic violence shelter in August 2014 and resumed her abusive relationship with Father, and her referral for individual domestic violence counseling was closed for non-participation. And although she completed a parent aide intake for visitation and parenting classes, she then failed to engage in the service; the referral was changed to a visit-only parent aide, then even that referral was closed for lack of contact. She saw the children only once or twice in the fall of 2014, and otherwise had no contact with them from August 2014 through June 2015.

¶10 Mother began engaging in services in earnest in mid-2015. She reconnected with DCS in June 2015 and requested new referrals for services. Since that time, she has drug tested consistently (except for one missed test in October) with no positive results. She completed standard outpatient drug treatment as well as a follow-up recovery maintenance program. Mother participated in visitation with the children beginning in November 2015, including therapeutic visitation with the older son, and she engaged in weekly one-on-one parenting classes with the parent aide. She also completed a course of individual trauma therapy with a domestic violence focus, and she continued to engage in trauma therapy at the time of the April 2016 severance hearing.

¶11 Mother completed a second psychological evaluation in December 2015. Dr. Thal noted the progress Mother had made since her mid-2015 turnaround, but opined that her prognosis to effectively parent in the near future remained guarded. He noted that she remained at risk of substance abuse relapse given her long history of drug use—particularly her use of drugs as a stress reliever and her prior pattern of relapse after a period of sobriety—and recommended completion of drug treatment and at least a year of proven sobriety. He also recommended ongoing therapy for at least a year to address her sexual abuse trauma and domestic violence, especially given the interplay between the trauma and her prior drug use as an escape mechanism. He opined that Mother was not yet well enough established in her recovery to be able to parent the children, and that the stressors involved in parenting the children would increase her risk of relapse. And he explained that the prognosis for her future ability to parent the children remained guarded until she had a longer period of recovery.

¶12 After a two-day evidentiary hearing in January and April 2016, the superior court found severance to be warranted for all three

children based on 15 months' time in care,[2] and further found that severance would be in the children's best interests. *See* Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(8)(c).[3] Mother timely appealed the severance ruling, and we have jurisdiction under A.R.S. § 8-235(A).

## DISCUSSION

**¶13** The superior court may terminate the parent–child relationship if (1) clear and convincing evidence establishes at least one statutory ground for severance, and (2) a preponderance of the evidence shows severance to be in the child's best interests. A.R.S. § 8-533(B); *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). We review the court's severance ruling for an abuse of discretion, deferring to its credibility determinations and factual findings. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004); *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).

**¶14** The ground for severance based on 15 months' time in care under A.R.S. § 8-533(B)(8)(c) requires proof that: (1) the child has been in an out-of-home placement for at least 15 months, (2) "[DCS] has made a diligent effort to provide appropriate reunification services," (3) "the parent has been unable to remedy the circumstances" necessitating the out-of-home placement, and (4) "there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future." The relevant circumstances are those existing at the time of severance. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 96 n.14, ¶ 31 (App. 2009).

**¶15** Mother agrees that the children were in an out-of-home placement for the requisite period, but argues that severance was not warranted because, in light of her behavioral turnaround in mid-2015, she had successfully remedied the substance abuse and domestic violence issues necessitating the out-of-home placement. Although the superior court acknowledged Mother's substantial efforts and her significant

---

[2]     The court also found grounds for severance based on abandonment as to the younger son and nine months' time in care as to the older son and daughter. Because we affirm the court's ruling based on 15 months' time in care, however, we need not address these alternative grounds. *See Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 251, ¶ 27 (2000).

[3]     Absent material revisions after the relevant date, we cite a statute's current version.

progress, it nevertheless had a sufficient basis to conclude that she had not yet remedied the issues underlying the dependency.

¶16 As Dr. Thal testified, Mother had made substantial progress for a period of months beginning in mid-2015, but her long history of substance abuse, particularly given its interrelationship with as-yet unresolved trauma, necessitated a longer period of sobriety, treatment, and recovery to ensure stability and safety for the children. Mother's pattern of relapse after periods of progress during the dependency further supports the conclusion. Although the superior court acknowledged that "[she] is close," Mother had not yet remedied the issues, and without a longer period of sobriety and completion of therapy addressing domestic violence and trauma issues, had not yet demonstrated the stability necessary to safely parent in the near future.

¶17 Mother also argues that DCS did not provide sufficient reunification services because she was not allowed enough time after re-engaging in June 2015. But Mother had almost two and a half years to engage in services after the older son and daughter were removed from her care. Although she had a period of progress while pregnant with the younger son, she stopped participating completely for 10 months after his birth and did not engage again until six months after DCS filed its December 2014 severance motion. Although Mother has made substantial and admirable progress since re-engaging in June 2015, her late reengagement does not render the services inadequate.

¶18 Finally, Mother argues that the court erred by finding severance to be in the children's best interests in light of her June 2015 turnaround and her current and potential future relationship with the children. In considering best interests, the court must determine "how the child would benefit from a severance *or* be harmed by the continuation of the relationship" with the biological parent. *Maricopa Cty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990). Evidence that a child is adoptable or that there is a current adoptive plan may support a finding that termination is in the child's best interests, as may evidence that the current placement is meeting the child's needs. *Lawrence R. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. 585, 587, ¶ 8 (App. 2008); *Mary Lou C.*, 207 Ariz. at 50, ¶ 19. Here, the record supports the court's findings that Mother was not capable of safely parenting the children and that severance would allow the children to benefit from adoption by the maternal grandparents, in whose care they were thriving. Accordingly, the court did not abuse its discretion by finding severance to be in the children's best interests.

## CONCLUSION

¶19      The severance ruling is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:  AA