NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

MYCHEL E., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, A.S., *Appellees.*

No. 1 CA-JV 17-0280
FILED 1-16-2018

Appeal from the Superior Court in Maricopa County
Nos. JD33267
JS18793
The Honorable Alison S. Bachus, Judge

**AFFIRMED**

COUNSEL

David W. Bell Attorney at Law, Higley
By David W. Bell
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Laura J. Huff
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Diane M. Johnsen joined.

---

**C R U Z**, Judge:

¶1   Mychel E. ("Father") appeals the superior court's order terminating his parental rights. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2   Father is the biological parent of A.S., born October 1, 2016. When A.S. was born, hospital staff immediately reported the birth to the Department of Child Safety ("DCS") due to Father's and mother's[1] "extensive history with DCS." Both Father's and mother's parental rights to two other children had recently been terminated. At the time of A.S.'s birth, Father was incarcerated.

¶3   Five days after A.S.'s birth, DCS filed a dependency petition, alleging Father was incarcerated and had a long history of substance abuse which prevented him from providing proper and effective parental care and control to A.S. Two months later, in December 2016, DCS petitioned to terminate Father's parental rights to A.S. because his parental rights to another child had been terminated within the preceding two years for the same cause. *See* Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(10).

¶4   At the combined dependency and termination hearing in May 2017, the court found A.S. dependent as to Father and granted DCS' motion to file an amended petition for termination to add an allegation of abandonment as to Father. After hearing testimony from Father and the DCS case manager, the court terminated Father's parental rights on both grounds.

¶5   Regarding the prior termination of parental rights within the preceding two years, the superior court first found that Father's rights to

---

[1] Mother's parental rights were terminated simultaneously with Father's, but she is not a party to this appeal.

another child, M.E., were terminated in September 2016.[2]  It found the factual causes of the termination were Father's incarceration and his failure to engage in services, maintain housing, or sustain a source of income.  With regard to Father's ability to parent A.S., the court found Father had been, and currently was, in the custody of the Arizona Department of Corrections and accordingly lacked housing or regular employment, and had not engaged in services offered by DCS.  The court found that DCS had provided Father sufficient reunification services and that based on Father's history and the evidence before the court, there was nothing to indicate Father's plan for A.S. would be sufficiently different than his unsuccessful plan for M.E. so as to produce a different result.

¶6        With regards to the ground of abandonment, the superior court found Father had done "nothing" to establish a relationship with A.S.; had failed to provide support, ask for visits, or send any cards, gifts, or letters; and did not rebut the presumption of abandonment resulting from his failure to maintain a normal parent-child relationship for a period beyond six months.

¶7        The superior court found by a preponderance of the evidence that termination of Father's parental rights was in A.S.'s best interest because A.S. had been in the same placement since he was removed from Father's care in October 2016; the placement was meeting all of A.S.'s needs, providing A.S. with a stable home, and allowing visits from A.S.'s siblings; and A.S. had bonded with the placement.  The court also found termination of Father's parental rights was in A.S.'s best interest because it would further the plan of adoption, which would provide A.S. with permanency, stability, and a drug-free home; A.S. was adoptable; and another adoptive placement could be located should the current placement be unable to adopt.

¶8        Father timely appealed.  We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1), and -2101(A)(1).

---

[2]        Although the termination order for another child, S.E., also was before the court, that order does not discuss the factual cause for termination.  Accordingly, in considering the prior-termination ground alleged for severance of Father's rights to A.S., we focus on the order terminating Father's rights pertaining to M.E.

**DISCUSSION**

**¶9** Father argues the superior court erred by allowing the State to add an untimely allegation of abandonment over Father's objection and by finding DCS had proven both grounds for termination of his parental rights. However, because we conclude sufficient evidence supports termination on the ground of "ha[ving] parental rights to another child terminated within the preceding two years for the same cause," *see* A.R.S. § 8-533(B)(10), we need not address Father's contentions regarding the ground of abandonment or the amendment to the termination petition, *see Crystal E. v. Dep't of Child Safety*, 241 Ariz. 576, 577, ¶ 5 (App. 2017) (stating this Court need not address an appellant's arguments pertaining to other grounds for termination if reasonable evidence supports any one ground).

I.     Standard of Review

**¶10** We review a termination order for an abuse of discretion. *Frank R. v. Mother Goose Adoptions*, 243 Ariz. 111, 114, ¶ 17 (2017). When reviewing the record, we "accept the juvenile court's findings of fact unless no reasonable evidence supports those findings, and we will affirm a [termination] order unless it is clearly erroneous." *Roberto F. v. Ariz. Dep't of Econ. Sec.*, 232 Ariz. 45, 54, ¶ 41 (App. 2013).

II.     Grounds for Termination of Parental Rights

**¶11** Father argues the superior court abused its discretion by finding he was unable to parent A.S. for the same cause that led to the termination of his parental rights to another child.[3] We disagree.

**¶12** A parent's rights in the care, custody, and management of his children are fundamental, but not absolute. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 24 (2005). A court may terminate those rights if it finds: (1) clear and convincing evidence of one of the statutory grounds for termination in A.R.S. § 8-533(B), and (2) by a preponderance of the evidence that termination is in the child's best interest. *Id.* at 281–82, 288, ¶¶ 7, 41.

**¶13** Section 8-533(B)(10) allows termination if "the parent has had parental rights to another child terminated within the preceding two years for the same cause and is currently unable to discharge parental

---

[3]     Father does not challenge the superior court's best-interests finding, therefore we accept the court's finding and do not address it further. *See Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 13 (App. 2000) (accepting best interests finding when parent did not challenge it).

responsibilities due to the same cause." A.R.S. § 8-533(B)(10). The "same cause" language in subsection (B)(10) "refer[s] to the factual 'cause' that led to the termination . . . and not the statutory ground or grounds that supported the preceding [termination]." *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 48, ¶ 11 (App. 2004). When proceeding pursuant to subsection (B)(10), DCS is required to "prove by clear and convincing evidence that it had made a reasonable effort to provide [the parent] with rehabilitative services or that such an effort would be futile." *Id.* at 49, ¶ 15. Even if the record does not support the conclusion that DCS made reasonable efforts to provide appropriate reunification services, we may affirm if the facts indicate the parent "could not have completed all of the services required to remedy the cause making [the parent] unable to discharge parental responsibilities . . . by the time of the [termination] hearing." *See id.* at 50, ¶ 18 (affirming severance when parent had been incarcerated throughout proceedings for drug-related offense and the evidence indicated parent's substance abuse problem would require "six to eight months' inpatient treatment, aftercare substance abuse treatment, individual therapy, and hands-on parenting instruction" after her release from prison).

¶14          Sufficient evidence supports the superior court's finding that Father had his parental rights to another child terminated within the preceding two years for the same cause and was unable to discharge parental responsibilities due to the same cause. Father concedes the court terminated his rights to M.E. in September 2016 on the ground of out-of-home placement for nine months. He also concedes that, as the court in M.E.'s case found, he never engaged in services for M.E., lacked stable housing and income, and was "in and out of incarceration" throughout the proceedings. At the termination hearing in this case, Father admitted that while the case regarding M.E. was in progress, he was arrested multiple times in 2015 and 2016 for a drug-related offense and told DCS he would participate in services for M.E. upon his release but never did so. He acknowledged a history of drug use, including heroin, methamphetamine, marijuana, and Percocet, starting in 2008, and he admitted he began using illegal drugs upon his release from jail in 2015 despite receiving services.

¶15          With regards to A.S., Father was incarcerated throughout A.S.'s dependency and termination proceedings for violating the probation imposed after his April 2015 drug-related conviction. He accordingly lacked housing or regular income with which to support A.S. Father acknowledged receiving letters from the DCS case manager informing him of the status of A.S.'s case, directing him to participate in services offered to him while incarcerated, and telling him to provide any supporting

documentation to DCS. However, although Father states he participated in inmate-run Alcoholics Anonymous and Narcotics Anonymous programs, he did not provide any supporting evidence he participated in such services. The superior court also expressed concern regarding Father's track record with such programs.[4] Similarly, although Father stated he would be living in a halfway home upon his release, he provided no evidence confirming his enrollment in a halfway home. He also admitted he did not know whether A.S. could live with him upon his release and acknowledged he would not be able to immediately take custody of A.S.

¶16        The DCS case manager testified that even after Father's release, Father would need to complete roughly six months of services, including urinalysis, substance abuse assessment, and parent aide services, before he could be reunited with A.S. Moreover, the case manager stated Father would be expected to maintain appropriate housing and income, and he said he had concerns with Father's ability to parent because Father was incarcerated and would need to demonstrate sustained sobriety for a period after his release if he were not allowed to bring A.S. into a halfway home. The case manager also explained Father had demonstrated a pattern of promising to participate in services after being released from prison but not following through with the services, as demonstrated by his actions in the severance case concerning M.E.

¶17        This evidence is sufficient to show that, as in the termination proceedings regarding M.E., Father failed to engage in the offered services, lacked stable housing and income, and was "in and out of incarceration." Sufficient evidence supports the superior court's finding that Father had his parental rights to another child terminated within the preceding two years for the same cause and was unable to discharge parental responsibilities due to the same cause. Additionally, the record does support the court's implicit finding that rehabilitative measures by DCS would have been futile in remedying the cause for Father's inability to parent A.S. before the time of the severance hearing.

---

[4]        The court noted Father had stated he was participating in Alcoholics Anonymous and Narcotics Anonymous programs when sentenced for his criminal matter in 2015 and continued his drug use even while under the supervision of pretrial services.

**CONCLUSION**

¶18        For the foregoing reasons, we affirm the superior court's order terminating Father's parental rights as to A.S.



AMY M. WOOD • Clerk of the Court
FILED:  AA