NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

DAPHNE N., *Appellant*,

*v.*

MICHAEL B., A.B., *Appellees*.

No. 1 CA-JV 18-0094
FILED 8-28-2018

Appeal from the Superior Court in Maricopa County
No. JS518391
The Honorable Steven P. Lynch, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

John L. Popilek, PC, Scottsdale
By John L. Popilek
*Counsel for Appellant*

Law Office of Judith E. Abramsohn, Phoenix
By Judith Elaine Abramsohn
*Counsel for Appellee Michael B.*

---

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Maria Elena Cruz joined.

---

**C A T T A N I**, Judge:

¶1        Daphne N. ("Mother") appeals from the superior court's order in this private severance action terminating her parental rights to her child A.B.  For reasons that follow, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2        Mother and Michael B. ("Father") are the parents of A.B., born in May 2012.  In 2017, Father filed a petition to terminate Mother's parental rights to A.B. alleging abandonment.  *See* Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(1).

¶3        At the resulting severance trial, Father testified that he and Mother had dated briefly before Mother was arrested and sentenced to two years in prison for a probation violation and a drug offense.  About two weeks after her arrest, Mother told Father she was pregnant.  Before A.B.'s birth, Father filed a petition in family court to establish paternity and for child custody, and the court granted him temporary custody while Mother remained incarcerated.  Father took custody of A.B. just days after his birth, and A.B. has lived with him ever since.

¶4        Father took A.B. to visit Mother in prison twice before her release in late 2012, and she then visited A.B. three times before a February 2013 family court hearing.  At that hearing, the family court entered orders (in accordance with an agreement reached by Mother and Father) establishing paternity, granting Father sole legal decision-making, designating Father primary residential parent, and allowing Mother one day (7 hours) of scheduled parenting time each week and daily voice or video calls with A.B.

¶5        Despite the parenting time order, Mother visited A.B. only approximately 10 times (one or two hours each time) in the more than four years that followed, and she did not call him.  Mother gave A.B. only a few gifts, and she never provided any financial support for him.  Mother last

2

saw A.B. in May 2016. Father denied preventing contact between Mother and A.B., testifying instead that she simply stopped calling.

¶6        In contrast, Mother testified that she visited A.B. weekly through the end of 2013, but that Father thereafter began restricting her access to one visit every one or two months and had denied contact on multiple occasions. Mother acknowledged, however, that she stopped visiting A.B. from October 2015 through mid-2016 because of an ongoing dependency proceeding brought by the Department of Child Safety ("DCS") as to her younger daughter, D.F. Mother also confirmed that she had never provided monetary support for A.B.

¶7        Mother acknowledged a years-long struggle with drug addiction. She described in particular on-and-off methamphetamine use for 11 years. Mother testified that in the past she had been able to stay clean for substantial periods of time, but had nevertheless relapsed. Her addiction contributed to DCS's involvement with D.F., who was hospitalized after ingesting methamphetamine when less than one year old. Although Mother initially claimed to have been clean for six years at the time of D.F.'s drug exposure, she tested positive for amphetamines and methamphetamine at that time. She tested negative for drugs for the next several months, and D.F.'s dependency was dismissed in mid-2016.

¶8        Mother testified that she last used methamphetamine in July 2017, four months after Father filed the severance petition. She was again arrested in September 2017 after police found stolen property and credit cards in her residence, along with a firearm within D.F.'s reach. This arrest led DCS to file a new dependency regarding D.F.

¶9        While on pretrial release for the resulting charges, Mother voluntarily entered a residential drug treatment program, where—in her view—she made substantial progress. But Mother subsequently pleaded guilty to credit card theft and was sentenced to a stipulated one-year prison term. Nevertheless, Mother testified that she planned to return to the residential drug treatment program, and in fact anticipated being hired as a staff member, after completing her prison term.

¶10        The superior court terminated Mother's parental rights to A.B., finding grounds for severance based on abandonment and that severance would be in A.B.'s best interests. Mother timely appealed, and we have jurisdiction under A.R.S. § 8-235(A).

**DISCUSSION**

**¶11**        The superior court may terminate the parent–child relationship if clear and convincing evidence establishes at least one statutory ground for severance, and a preponderance of the evidence shows severance to be in the child's best interest.  A.R.S. § 8-533; *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005).  We review the superior court's severance ruling for an abuse of discretion, deferring to the court's credibility determinations and factual findings.  *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004); *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).

**¶12**        Mother challenges only the superior court's best interests finding; she does not dispute the finding of abandonment.  Termination is in a child's best interests if the child would be harmed by the continuation of the parent–child relationship or would benefit from severance.  *Mary Lou C.*, 207 Ariz. at 50, ¶ 19.

**¶13**        Mother urges that absent a prospective adoptive mother, severance would not benefit A.B. because he would be left with a "maternal void" instead of the stability of a continued relationship with her.  Availability of a likely adoptive parent is one potential benefit relevant to a best interests assessment, and absent other considerations, improbability of adoption weighs against severance.  *See Titus S. v. Dep't of Child Safety*, 244 Ariz. 365, 370–71, ¶¶ 19–22 (App. 2018); *see also Maricopa Cty. Juv. Action No. JS-500274*, 167 Ariz. 1, 6 (1990) (noting the "unspoken assumption that a parent, even an inadequate one, is better than no parent at all unless the child can somehow benefit from losing his natural parent").  But here, Father has provided a safe and stable home for A.B. since birth, and although there is no dispute that Mother loves A.B., her absence from his life does not reflect the stable relationship she claims, but rather has itself created a "maternal void."

**¶14**        Moreover, the record supports the superior court's conclusion that maintaining the parent–child relationship risked harm to A.B.  Despite Mother's plan to successfully overcome her years-long methamphetamine addiction and her progress toward achieving that goal, the record supports the superior court's conclusion that Mother's history of relapse into drug abuse and her history of criminal activity put a child in her care at risk.  Mother has not shown that the superior court abused its discretion by concluding that under the circumstances presented—including Mother's lengthy absence, her repeated criminal activity, and her history and future

risk of methamphetamine dependence—severance was in A.B.'s best interests.

¶15　　　　Accordingly, the record supports the superior court's best interests determination, and we affirm the ruling terminating Mother's parental rights to A.B.

**CONCLUSION**

¶16　　　　The severance ruling is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:  AA