NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

MAGGIE T., *Appellant,*

*v.*

SALLY T., STEPHEN T., P.T., *Appellees.*

No. 1 CA-JV 22-0140
FILED 10-27-2022

Appeal from the Superior Court in Maricopa County
No. JS21161
The Honorable Sam J. Myers, Judge

**AFFIRMED**

COUNSEL

David W. Bell, Attorney at Law, Higley
By David W. Bell
*Counsel for Appellant*

Cantor Law Group PLLC, Phoenix
By Kyle I. Stephenson
*Counsel for Appellees, grandparents, Sally T., and Stephen T.*

## MEMORANDUM DECISION

Vice Chief Judge David B. Gass delivered the decision of the court, in which Presiding Judge Samuel A. Thumma and Judge Cynthia J. Bailey joined.

**G A S S**, Vice Chief Judge:

¶1          Mother Maggie T. appeals the superior court's order terminating her parental rights to her child, P.T. We affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2          This court views the evidence, and reasonable inferences drawn from it, in the light most favorable to sustaining the superior court. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 13 (App. 2002).

¶3          Mother took P.T. to her maternal grandparents' home soon after P.T.'s birth in 2013. The child has resided there ever since. Until March 2017, Mother also lived in their home. When mother moved out, she consented to grandparents becoming P.T.'s Title 14 guardians. Since then, mother mainly lived apart from P.T.

¶4          For the next four years, mother lived in various places, such as extended-stay hotels or with friends. She maintained no regular employment. She had only intermittent contact with P.T., and often arrived late to visits, which upset P.T. And mother provided no direct financial support for P.T. and only occasionally provided clothes, gifts, or notes.

¶5          Eventually, grandparents set aside time on Sundays after church for mother to visit P.T., but mother only attended one such visit. In November 2021, grandparents petitioned to terminate mother's parental rights to P.T., alleging mother abandoned the child. *See* A.R.S. § 8-533.B.1. After the adjudication on the petition, the superior court terminated mother's parental rights, and she timely appealed. This court has jurisdiction under article VI, section 9, of the Arizona Constitution, and A.R.S. §§ 8-235.A., 12-120.21.A.1, and 12-2101.A.1.

## DISCUSSION

¶6          Mother contends the superior court erred in terminating her parental rights on two grounds: (1) insufficient evidence supports the

abandonment and (2) grandparents interfered with her ability to maintain contact with P.T.

**¶7**        Parental rights are fundamental, but not absolute. *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 97, ¶ 7 (App. 2016). The superior court may sever a parent's rights if clear and convincing evidence establishes at least one statutory ground. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000); A.R.S. § 8-533.B. "Clear and convincing" means the grounds for termination are "highly probable or reasonably certain." *Kent K. v. Bobby M.*, 210 Ariz. 279, 284–85, ¶ 25 (2005). The superior court also must find by a preponderance of the evidence termination is in the child's best interests. *Id.* at 288, ¶ 42.

**¶8**        This court reviews the superior court's decision on a petition to terminate parental rights for an abuse of discretion. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004). Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," this court will affirm an order terminating parental rights if reasonable evidence supports the order. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (citation omitted). This court does not reweigh the evidence, but "look[s] only to determine if there is evidence to sustain the [superior] court's ruling." *Mary Lou C.*, 207 Ariz. at 47, ¶ 8.

**¶9**        Mother challenges the superior court's abandonment finding. A.R.S. § 8-533.B.1. Abandonment occurs when a parent fails to "provide reasonable support and to maintain regular contact with the child, including providing normal supervision." A.R.S. § 8-531(1). Courts measure abandonment "not by a parent's subjective intent, but by the parent's conduct." *Michael J.*, 196 Ariz. at 249, ¶ 18. The superior court must consider "whether the parent has provided reasonable support, maintained regular contact, made more than minimal efforts to support and communicate with the child, and maintained a normal parental relationship." *Id.* at 249–50, ¶ 18. Parents must assert their "legal rights at the first and every opportunity." *Id.* at 251, ¶ 25.

**¶10**        Mother argues the evidence does not support abandonment. But as to support, mother provided P.T. no financial support and only occasionally gave P.T. clothes, gifts, or notes.

**¶11**        As to reasonable contact and efforts, mother says grandparents did not allow in-person visits during the pandemic. Even so, since 2019, mother visited P.T. only a few times. Mother often arrived late

for the few in-person visits she had. And in the six months before trial, even after mother knew of the termination petition, she visited P.T. in-person twice for a total of two hours. Mother acknowledged she has not maintained a normal parent-child relationship with P.T. since 2019.

¶12 Daily parenting and visits aside, mother did not maintain regular contact with P.T. by alternative means, such as phone calls or video visits. *See id.* at 250, ¶ 22 (holding, even when challenging, parents must work to persistently establish their relationship and vigorously assert their parental rights). Grandparents acknowledged P.T. had a busy schedule during the week, and they did not allow mother to call after 7:00 p.m. because it was P.T.'s bedtime. In 2020, mother spoke with P.T. by phone or video only seven times for a total of forty-two minutes, and she had no contact with P.T. on P.T.'s birthday. From January to October 2021, mother spoke with P.T. once for fifty-five minutes, during a phone call grandparents initiated. And in the six months before trial, she called P.T. four times totaling about fifty minutes.

¶13 Next, mother argues grandparents used the guardianship to cause her to abandon P.T. *See Matter of Guardianship of Mikrut*, 175 Ariz. 544, 547 (App. 1993). But mother voluntarily agreed to the guardianship and never revoked it, as she had the right to do. *See Michael J.*, 196 Ariz. at 249–50, ¶ 18 (looking to the parent's objective behavior when determining abandonment). Still, the evidence shows grandparents placed few restrictions on—and in fact facilitated—mother's contact with P.T. Grandparents paid for mother's cell phone and, at one point, offered to buy her a car. As grandmother testified, mother could have called regularly on the weekends or asked for a specific call-back time if grandparents were not available, but she did not do so. Moreover, grandparents told mother she could visit P.T. each Sunday, but mother only did so once and did not ask for any additional visits on other days. And grandparents—not mother—initiated in-person visits.

¶14 The trial record does not support finding grandparents persistently and substantially restricted mother's ability to interact with P.T. and mother did not revoke the guardianship as was her right. The superior court considered mother's argument grandparents limited her contact but found mother "failed to show interest or initiative in maintaining regular contact" with P.T.

¶15 Based on the above, reasonable evidence supports the superior court's abandonment finding. *See* A.R.S. § 8-531(1); *Jordan C.*, 223 Ariz. at 93, ¶ 18. The superior court did not abuse its discretion because the

evidence establishes mother has not "provided reasonable support, maintained regular contact, made more than minimal efforts to support and communicate with the child, and maintained a normal parental relationship." *Michael J.*, 196 Ariz. at 249–50, ¶ 18.

## CONCLUSION

**¶16**       We affirm.



AMY M. WOOD • Clerk of the Court
FILED:       AA