NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO H.V.

No. 1 CA-JV 23-0190
FILED 3-19-2024

Appeal from the Superior Court in Maricopa County
No. JS21641
The Honorable Pamela S. Gates, Judge

**AFFIRMED**

COUNSEL

Robert D. Rosanelli, Phoenix
*Counsel for Appellant, Anthony V.*

Goldman Law LLC, Phoenix
By Lundyn J. Garrett
*Counsel for Appellee, Kimberly T.*

---

**MEMORANDUM DECISION**

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Michael J. Brown joined.

---

**C A M P B E L L**, Judge:

¶1        Father appeals from the order terminating his parental rights to his daughter, Hannah.[1] The court found Father abandoned Hannah and that termination was in her best interests. *See* A.R.S. §§ 8-531(1), -533(B)(1**)**. Father concedes the finding of abandonment but challenges the best-interests finding. Because sufficient trial evidence supports the best-interests finding, we affirm.

## BACKGROUND

¶2        Mother and Father were romantically involved at the time Hannah was born in June of 2018. Hannah was Mother's first child; Father had two other children (a son and a daughter) with other women. Mother testified that while they were together, Father was selling and taking drugs illegally. She further testified that because he was under the influence, Mother took over responsibility for Father's other daughter during his visitation. Mother described her relationship with Father as unpredictable and emotionally, verbally, and financially abusive. When Hannah was a year and a half old, Mother and Father separated.

¶3        Mother and Hannah have lived with Hannah's maternal grandfather since Hannah was born. Father has always known Mother's home address, email address, and work phone number. Each year, Father has left Mother a voicemail on Hannah's birthday, but he has not asked about Hannah or attempted to visit her. In 2020 and 2021, Father sent Mother flowers on Mother's birthday. In December 2020, Father texted Mother wishing them a Merry Christmas and telling her that he missed them. Other than the text messages and voicemails, Father has not spoken to Mother. He has not seen Hannah or Mother since November 2019. Father has not provided any financial support, nor provided any cards, gifts, letters, or necessities for Hannah after he and Mother split.

---

[1]        We use a pseudonym to protect the identity of the child.

**¶4** In March 2023, Mother enrolled Hannah in kindergarten. She asked the school secretary how she could ensure Father would not be allowed to pick Hannah up from school. The secretary told her she could not prevent him from picking Hannah up without "court paperwork" since Father is on the birth certificate.

**¶5** In June 2023, Hannah was evaluated for an Individual Education Plan. Based on this evaluation, occupational therapy and developmental delay services were put in place. The evaluator also noted Hannah was at-risk for anxiety disorder. Following the evaluation, Hannah began receiving special education services.

**¶6** Mother filed a petition to sever Father's parental rights in June 2023 based on abandonment and alleged that termination was in Hannah's best interests. The court then ordered Mother to complete a social study. Father was scheduled to have a home visit as part of that study, but he said he had "other things to do." The evaluator was unable to conduct an interview with Father because he stopped communicating with her. At the conclusion of the social study, the evaluator recommended termination of Father's rights.

**¶7** The court granted Mother's petition in October 2023, finding Mother had proven abandonment by clear and convincing evidence and that termination was in Hannah's best interests by a preponderance of the evidence. Father timely appealed.

## DISCUSSION

**¶8** A parent's right to custody and control of his or her own child, while fundamental, is not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248–49, ¶¶ 11–12 (2000). The juvenile court may terminate the parental relationship where (1) clear and convincing evidence shows the existence of a statutory termination ground under A.R.S. § 8-533, and (2) a preponderance of the evidence shows that termination is in the child's best interests. *Kent K. v. Bobby M.*, 210 Ariz. 279, 281–82, 288, ¶¶ 7, 41 (2005).

**¶9** We accept the juvenile court's factual findings so long as they are supported by reasonable evidence and inferences, and we affirm the court's legal conclusions unless they are clearly erroneous. *Brionna J. v. Dep't of Child Safety*, 533 P.3d 202, 209–10, ¶¶ 30–31 (2023). We do not reweigh the evidence. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004). We review questions of statutory interpretation and application de novo, looking first to plain and unambiguous statutory language. *Id.* at ¶ 9.

¶10 Father does not dispute the court's abandonment finding. Instead, he argues the court abused its discretion by finding termination to be in Hannah's best interests because there was insufficient evidence to support that finding.

¶11 To terminate a parental relationship, the court must find that termination is in the child's best interests by a preponderance of the evidence. *Kent K.*, 210 Ariz. at 288, ¶ 41. Proof by a preponderance of the evidence occurs if the fact is more probable than not. *Id.* at 284, ¶ 25.

¶12 The best interests of the child are analyzed under the totality of the circumstances, but the child's "interest in stability and security" is the primary concern. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 148, 150, ¶¶ 1, 12 (2018). Termination is in the child's best interests if it will benefit the child, or if failure to terminate will harm the child. *Id.* at 150, ¶ 13. A court does not assume that an abandoned child will benefit from termination. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 14 (2016). However, the effect of a years-long lack of contact between a child and a parent may be considered. *Id.* at 5, ¶ 20. An abandoned child's inability to identify his or her father is also relevant, as "forcing contact between them could traumatize the [child]." *Steven M. v. Dep't of Child Safety*, 254 Ariz. 426, 431, ¶ 16 (App. 2023).

¶13 Here, Father has not seen Hannah since she was approximately 17 months old. At the time of the severance hearing, she was five years old. Hannah could not identify who her father was during the social study. When asked about her "dad," she referred to her maternal grandfather, who lives in the family home.

¶14 The social study evaluator testified that having Father, a stranger, come into Hannah's life unexpectedly could be detrimental to her well-being, especially given her special needs. She is in a home with both a maternal figure, Mother, and a paternal figure, her grandfather, who both provide for her emotional, physical, and financial needs. This evidence suggests that termination of Father's parental rights would result in greater stability for Hannah.

¶15 Father argues Mother's lack of adoption plans contradicts the court's best-interests finding. We disagree. The anticipated adoption of a child is but one factor for the court to consider when determining whether termination is in a child's best interests. *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 5 (App. 1998). "Another is whether an existing placement is meeting the needs of the child." *Id.* The record contains ample

evidence that Hannah's current living situation with Mother and her maternal grandfather is meeting her needs. Mother's family has supported Mother and Hannah since Mother's pregnancy. Hannah is "very attached and bonded" to Mother and her maternal grandfather, and the social study evaluator concluded "there is no shortage of safe and appropriate caretakers for [Hannah], including her maternal grandfather . . ., maternal grandmother, and the maternal aunt and uncle." Hannah is well cared for, and all her needs are being met by Mother and her extended family. Allowing Father to interrupt this family structure would disrupt Hannah's interest in stability and security. *See Alma S.*, 245 Ariz. at 150, ¶ 12.

**¶16** Conversely, Father has failed to develop any relationship with Hannah. In the totality-of-the-circumstances analysis, the court may consider the parent's "rehabilitation efforts." *Id.* at 151, ¶ 15. After his relationship with Mother ended, Father failed to meaningfully pursue a relationship with his daughter: he never attempted to arrange visitation, establish custody, or provide for Hannah financially. When given the opportunity to participate in the social study in this case, Father failed to attend the home evaluation or the interview. As noted by the by the court, Father has "no desire or intent to provide for the child's medical, social, physical or emotional needs" and "fail[ed] to provide care when given an opportunity."

**¶17** Moreover, to the extent relevant in an abandonment case, the record shows that Father abused the chances he had to parent Hannah. The court found that during his relationship with Mother (when he had access to Hannah), Father was emotionally, financially, and verbally abusive. To subject Hannah to a stranger who cannot be trusted with her safety would affirmatively harm her, especially given her happy and healthy living situation. *See Alma S.*, 245 Ariz. at 150, ¶ 13. When viewing Father's lack of parenting efforts and drug use alongside Hannah's special needs and lack of any relationship with Father, reasonable evidence supports the court's finding that termination is in Hannah's best interests.

**CONCLUSION**

¶18        We affirm.[2]



AMY M. WOOD • Clerk of the Court
FILED:    AA

---

[2] Although requesting attorneys' fees incurred on appeal, Mother cites ARCAP 21 (which is not authority to award fees in this context, *see* Ariz. R.P. Juv. Ct. 103(d)) and cites no substantive authority that would authorize a fee award. Accordingly, her request is denied.